WOOD RIVER BANK OF WOOD RIVER v. FREEMAN C. DODGE ET AL.

FILED APRIL 26, 1893. No. 4674.

1. **Review.** Where from an examination of the evidence it is apparent that the verdict is wrong, it will be set aside.

2. **Misconduct of Juror:** STATEMENT OF FACTS WHILE CONSIDERING VERDICT. A juror will not be permitted to state to his fellow-jurors, while they are considering their verdict, facts

in the case within his own personal knowledge but not given in
evidence. He should make the same known during the trial
and, if desired, testify as a witness in the case.

ERROR from the district court of Hall county. Tried
below before HARRISON, J.

*J. H. Woolley* and *Thompson Bros.*, for plaintiff in
error.

*Thummel & Platt, contra.*

MAXWELL, CH J.

The plaintiff brought an action against the defendants
to recover the sum of $1,884.25 with interest. To the pe-
tition the defendants filed an answer as follows:

"Come now the above defendants and for answer to the
petition of plaintiff say, that they formed a limited part-
nership in the transaction of purchasing and selling hogs
and conducted said business in the name of Dodge Bros.;
that they kept the account with the said plaintiff in all the
transactions done, and banked with this plaintiff as Dodge
Bros. for this business; that Freeman C. Dodge had a per-
sonal account with said bank, so did the said George F.
Dodge, for their own personal transaction of business
which had no connection whatever with the said Dodge
Bros.' business; that these defendants made all deposits
done under the business in the name of Dodge Bros., and
drew on the said plaintiff all the checks on the said plaint-
iff's bank in the name of Dodge Bros., and none other;
that George F. Dodge did all the business transactions for
the said firm and deposited all the funds for the sale of the
property and drew all the checks and money from the
plaintiff in the name of Dodge Bros., and none other;
that these defendants admit they drew from the said plaint-
iff the said sum of $21,993.21, and no more; they also ad-
mit they deposited the sum of $20,108.96, as credited to

them in the petition, and also claim the fact to be that they paid or deposited the additional sum of $7,832.47 to the said plaintiff, which the said plaintiff has neglected and refused to give them credit for as follows: On or about June 30, 1887, the United States National Bank deposited or paid to the plaintiff, to be placed to the credit of Dodge Bros., the sum of $5,812.89; that on the 18th day of July, 1887, the said Dodge Bros. deposited or paid into plaintiff's bank, to be credited to the said Dodge Bros., the sum of $600, on September 5, $789.23, and September 9, $629.65; that the said defendants are not indebted to said plaintiff in any sum whatever, but that the plaintiff was indebted at the commencement of this action on the said account the sum of $5,812.89, which sum the defendants claim justly due and wholly unpaid; therefore pray judgment against said plaintiff in the said sum of $5,812.89 over and above all claims so as aforesaid mentioned in plaintiff's petition, with interest thereon at seven per cent per annum from the 18th day of January, 1888, and costs."

The plaintiff filed the following reply:

"Now comes the above named plaintiff and for reply states: That it denies that the said defendants, or either of them, are entitled to the credit of $7,012.89, the same being the $5,812.89 and $1,200, mentioned in said defendants' answer, or any other or different amount than as mentioned in the said plaintiff's petition, or that the said plaintiff received the said amounts, or either of them, except in said petition mentioned and herein stated, and as further reply states that the $5,812.89 was received by the said plaintiff in draft in favor of said Dodge Bros. at the time in said answer mentioned, but that the same was claimed by the said Freeman C. Dodge to be his property or mostly so, and the said Freeman C. Dodge then and there ordered the same placed to his credit on his individual account with the said bank, which the said bank then and there did; that the same was done

by and with the knowledge and consent of the said George F. Dodge, and was afterwards by him ratified and adopted with the full knowledge of all the foregoing facts; that the plaintiff has since the said time made and effected a settlement with the said Freeman C. Dodge, and by and with the consent of the said George F. Dodge allowed and given the said Freeman C. Dodge entire and full credit for the said sum of $5,812.89, and that neither of said defendants are entitled to the said credit of the said amount on the account sued on in this case; that as to the facts as to whether or not the said defendants are partners or were at the time the said account was made and business transacted this defendant has neither knowledge nor information sufficient to form a belief and therefore denies the same and puts said defendants upon their proof. Wherefore the said plaintiff demands judgment against the said defendants as in its petition prayed."

On the trial of the cause the jury returned a verdict for the defendants for the sum of $4,719.71, upon which judgment was rendered.

Two errors are relied upon for a reversal of the judgment: First, that the verdict is against the weight of evidence; and, second, misconduct of certain jurors.

1. The testimony is undisputed that about the 1st of July, 1887, a large number of hogs were shipped in the name of Dodge Bros. to South Omaha; that the amount realized from these hogs was $5,812.89, which was placed to the credit of the Wood River Bank in the United States National Bank of Omaha. Up to this point there is no dispute. It is claimed on behalf of plaintiff that the hogs in question were the property of Freeman C. Dodge and paid for by him out of money obtained from the plaintiff, and that he directed the plaintiff to place the same to the credit of his individual account, which was done. This is denied by the defendants. Both of the defendants testify that the money was deposited to the credit of Dodge Bros.,

and not to the credit of Freeman. All the officers of the bank, some of whom seem to be disinterested, testify that such was the arrangement. We also find that in the bank book of George Dodge with the plaintiff, which is here in the record, these hogs were not credited to Dodge Bros. The officers of the bank testify that this book was delivered to George Dodge a few weeks after the transaction; that he returned and stated that he and his wife had looked over it and found it correct, except an item of $20. George denies receiving the book until about the month of January after the transaction. He in effect admits the $20 mistake. The mode of doing business with the bank seems to have been as follows: When a shipment of hogs was about to be made the defendants would receive credit for the supposed value of the hogs and were permitted to check the same out. It appears that about the 5th of September of that year Dodge Bros. made, or were about to make, a shipment of hogs to South Omaha and received credit at the bank for $600; a duplicate deposit slip being made. It is claimed by the plaintiff that the same day a second duplicate deposit for $600 was made. The defendant George Dodge testifies, in effect, that this was a second deposit and that it was received from a second shipment of hogs. On the other hand the cashier testifies that original credit was given in the morning and the duplicate slip given to the defendant; that in the afternoon he came into the bank and stated that he had not received a duplicate in the morning and that thereupon the cashier issued a second duplicate slip for $600, and wrote the abbreviated word "dupl." instead of triplicate on it. The agent of the railroad company at Wood River was called and stated, in substance, that a record was kept in his office of all shipments made from there and but one car of hogs was shipped by Dodge Bros. at the time stated, and he in effect corroborates the testimony of the cashier. It is very evident, therefore, that Dodge is mistaken in his testimony, and

that the cashier's testimony on that point is correct, and the verdict is against the weight of evidence.

2. The affidavit of one of the jurors was filed in support of one of the grounds of the motion for a new trial for the misconduct of certain jurors.   It is as follows:

"P. F. McCullough, being first duly sworn, deposes and says that he was a member of the jury to whom the above case was tried on February 15, 1890; that during the discussion of the case in the jury room the question came up as to whether Freeman C. Dodge did authorize the Wood River Bank to place the said $5,812.89 to his own individual credit, when Mr. Hollister and Mr. Hockenberger both swore he did so authorize, and F. C. Dodge swore he was not in Wood River, Nebraska, on July 2, 1887, the date of said credit, but was in Omaha, Nebraska; that many of the jury were in doubt as to who was mistaken on this point, and so expressed themselves; that thereupon one C. C. Robinson, a member of said jury, stated that he knew Mr. Hollister and Mr. Hockenberger were mistaken as to that point, for he was in Omaha, Nebraska, and saw the said Freeman C. Dodge there himself on July 2, 1887, and he could not have been present in Wood River, Nebraska, on that day and ordered said credit; that many of said jury, and especially this affiant, having confidence in and relying upon the statement of said C. C. Robinson, became satisfied that said Hollister and Hockenberger were mistaken on this point, and so may be mistaken on other points, and thereupon he changed his vote from the plaintiff's favor to and for a verdict for these defendants." There is also an affidavit of W. H. Thompson to the same effect. There is also an affidavit of J. H. Woolley that the jury were sent out Saturday evening; that a number of them resided in the western part of the county and were very anxious to return home; that they inquired of the bailiff the time when the last train would be due going west, and having ascertained the time, the verdict was returned

before that hour and presumably without proper deliberation.

The counter-affidavit of Robinson is in the record as follows:

"Chan C. Robinson, being sworn, deposes and says that he was one of the panel in the case of the Wood River Bank of Nebraska against Freeman C. Dodge and George F. Dodge, which case was tried and submitted to the jury on the 15th day of February, 1890; that affiant has heard read the affidavit of P. F. McCullough filed in and attached to the motion in this case for a new trial; that the matter in said affidavit wherein said McCullough swore that this affiant said in the jury room while deliberating on their verdict that he, Freeman C. Dodge, could not have been at Wood River on the 2d day of July as he, Chan C. Robinson, saw him in Omaha on that day is wholly without foundation and untrue; that affiant did not say he saw said Dodge on the 2d day of July as aforesaid, in Omaha, all affiant did say on this subject in the deliberation of said jury was wholly in regard to the evidence introduced on the trial. Affiant further says that the jury, and each of them, so far as he knows and was informed, tried all honest means to impress others differing with them as to their views in the evidence and the instructions of the court; that after deliberating several hours on the matter they finally agreed upon their verdict brought into court and affiant did not in any way attempt (except by argument) to convince others differing with him as to what he thought was right on the evidence in the case."

It will be observed that Mr. Robinson does not make a full, unequivocal denial of the charge against him. The affidavit in fact is a skillful evasion of the matter in issue. His statement that what he said was wholly in relation to the evidence in the case, and that he did not in any way attempt, except by argument, to convince others differing from him, falls far short of a denial of the charges.

In *Richards v. State,* 36 Neb.; 18, it was held that a juror will not be permitted to state to his fellow-jurors, while they are considering their verdict, facts in the case within his own personal knowledge. He should make the same known during the trial and testify as a witness in the case. It is for the court to say what evidence is admissible in a case, and the adverse party may desire to cross-examine him. In any event it is his duty to be governed by the evidence introduced on the trial and the instructions of the court; otherwise, in case of an erroneous verdict, it would be impossible to review the same. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.