AUGUST MEYER, APPELLEE, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED DECEMBER 22, 1933. No. 28686.

*E. J. Shoemaker* and *Kennedy, Holland & De Lacy*, for appellant.

*O'Sullivan & Southard* and *Robert H. McCaw, contra.*

Heard before Goss, C. J., Rose and Paine, JJ., and Begley and Horth, District Judges.

Horth, District Judge.

On May 14, 1931, the plaintiff, August Meyer, purposing to become a passenger upon an approaching westbound street car of the defendant, Omaha & Council Bluffs Street Railway Company, entered the safety zone at Farnam and Fifteenth streets in the city of Omaha. As the front of the street car reached the point opposite where plaintiff was standing, they contacted and plaintiff was severely injured. Charging that the negligence of the motorman operating the street car, in suddenly opening the north front doors of said street car and causing said doors to extend northward from the body of said street car and come in contact with plaintiff's right side and shoulder, was the proximate cause of plaintiff's injuries, plaintiff sued the defendant to recover damages therefor. There was a trial in the district court resulting in a verdict and judgment for $3,000 in favor of plaintiff. Defendant's motion for a new trial was overruled, and it prosecutes this appeal, presenting only two questions to be determined by this court, the first of which is:

■ Did the trial court err in overruling defendant's motion for a directed verdict at the close of the evidence?

The plaintiff, describing the manner in which he received his injuries, testified, in substance, that as he entered the safety zone, the street car upon which he purposed to take passage was approaching about a block distant. Awaiting its arrival, plaintiff took a position facing south near the center of the safety zone, and that standing in this position there would be a clearance of about one

foot between his body and the street car as it passed him; that as the front of the car arrived at a point about opposite plaintiff, plaintiff took his eyes off the street car, turned eastward and started to take a step forward, east, when the door came out towards him like it was shot out of a gun, he ducked, and that is the last he remembered until he was loaded into an ambulance; that during the noon recess of the trial in the district court plaintiff saw his attorney, Mr. O'Sullivan, make measurements upon a street car of the type which came in contact with plaintiff when he received his injuries; that this measurement showed that when the front doors of the street car were opened they extended eleven or twelve inches beyond the body of the street car. Upon cross-examination plaintiff testified that he did not know just what part of the car struck him. On behalf of the defendant, the motorman of the street car involved in the accident testified, in substance, that as the street car approached the intersection of Farnam and Fifteenth streets the plaintiff was standing in the safety zone clear of the car and looking at it; denied that he opened the front doors of the street car until the car had come to a complete stop, and in this denial he is corroborated by the testimony of the witness Mr. Lighthall called on behalf of defendant. Mr. Finley, chief engineer of the defendant, was called by the defendant as a witness and testified that the rear half of the front door of the street car, when opened, extended five and one-half inches beyond the body of the car, and that the front half of the front door, when opened, extended a less distance. The witness Lighthall, called on behalf of the defendant, testified, in substance, that as the street car was half way in the safety zone the plaintiff was standing very close to the car with his back to the car facing the curb; that the motorman sounded his bell to attract plaintiff's attention and went on by him; that as the car passed him plaintiff turned or started to turn and went out of witness' view for a second, and when witness next saw him plaintiff was going down. The

motorman denies that he rang the bell and denies that the street car struck the defendant.

The testimony is very conflicting, but there is sufficient evidence supporting plaintiff's theory of the case to entitle him to a submission of the facts for determination by the jury.

■ Did the trial court err in overruling defendant's motion for a new trial based on misconduct of the jury?

Mr. Wright E. Moon was one of the jurors impaneled to try the cause. After the witness Lighthall had testified in the case and before the case had been submitted to the jury, the juryman, Mr. Moon, for the express purpose of satisfying himself as to whether or not the witness Lighthall could see all that he testified to seeing, boarded one of the defendant's street cars, of a type similar to the one involved in the accident in this case, and rode the same for several blocks, sitting in the same position the witness Lighthall testified he was sitting at the time of the accident; that after so doing the juror, Mr. Moon, came to the conclusion that Mr. Lighthall could not see what he testified he did see, and after the jury had retired for deliberation, Mr. Moon stated to his fellow jurors what he had done and the conclusion he had drawn concerning Mr. Lighthall's testimony. In *Kelley v. Adams County*, 113 Neb. 377, it is held:

"Where a juror, during the trial, unofficially visits the *locus in quo*, and reaches a conclusion therefrom in reference to material facts in the case, he thereby disqualifies himself as such juror."

It is the facts thus gained by the juror and the conclusion reached therefrom that disqualify him, and it is immaterial whether the place visited was the *locus in quo*, or some other place. As is said in *Kelley v. Adams County, supra:* "The test is, are the facts thus gained of such weight as to enable a reviewing court to say that they had no part in the juror reaching the verdict rendered?" It is manifest from juror Moon's affidavit that the facts gained by him upon his unofficial visit and the conclusion

he reached therefrom influenced him in reaching the verdict. The conduct of the juror was prejudicial to the rights of the defendant, and defendant's motion for a new trial should have been granted.

The judgment of the district court is reversed and the cause remanded.

REVERSED.