IN RE APPEAL OF ROBERTS CONSTRUCTION COMPANY. ROBERTS CONSTRUCTION COMPANY, A CORPORATION, APPELLEE, V. STATE OF NEBRASKA ET AL., APPELLANTS, IMPLEADED WITH L. N. RESS, STATE ENGINEER, ET AL., APPELLEES.

111 N. W. 2d 767

Filed December 1, 1961. No. 35012.

*Clarence A. H. Meyer,* Attorney General, *Harold S. Salter, C. L. Clark,* and *Robert R. Camp,* for appellants.

*Richard W. Smith* and *Richard L. Spangler, Jr.,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is an appeal from the disallowance of a claim by the Auditor of Public Accounts and the Secretary of State of the State of Nebraska. The claim arose out of a highway construction contract.

The contract in question was for the improvement of U. S. Highway No. 77 for a distance of 7 miles south from Beatrice, Nebraska. The contract was awarded to Roberts Construction Company by the Department of Roads and Irrigation on June 15, 1954. The work to be done by Roberts included grading and concrete paving of U. S. Highway No. 77 and surfacing of a county road which was to be used as a detour.

After the work had been completed, Roberts filed a claim with the State for damages for breach of contract. The claim included other items that are not important to the litigation at this time. The claim was disapproved by the State Engineer and disallowed by the Auditor of Public Accounts and the Secretary of State. Roberts then perfected an appeal to the district court for Lancaster County. After a lengthy hearing the district court allowed the claim in the amount of $16,594.45. The State has appealed from this judgment.

Roberts' theory of the case is that the State failed to make the construction site available to the contractor until long after the beginning date specified in the contract; that as a result of this delay the costs of the contractor were substantially increased over the amounts that were and could have been reasonably anticipated at the time the parties entered into the contract; that the failure of the State to make the construction site available at the starting date provided in the contract was a breach of express and implied covenants in that regard; and that Roberts is entitled to recover as damages the amount of its increased costs resulting from the delay.

The State's theory of the case is that it did not agree to make the construction site available to Roberts on the beginning date specified in the contract; that the State is not responsible for any delay that may have occurred and that such delay was due to other causes including the acts or omissions of the contractor; that the provision in the contract for an extension of time is the exclusive remedy of Roberts for any delay resulting from causes beyond its control; and that the evidence does not show with certainty what damages Roberts may have sustained or the causes thereof.

The district court found that the State had represented to Roberts and other bidders that by June 21, 1954, subgrade preparation on the detour would be completed and a windrow of rock placed along the length of the detour so that the contractor could begin work on that date; that utility lines would be out of the way of grading operations; that the State failed to carry out these representations and agreements at the time specified; that, without notice to Roberts or other bidders, the State granted Gage County the right to take 90 working days from May 20, 1954, to perform subgrade preparation and placement of rock upon the detour; that grading and paving along the south 5 miles of the project could not be commenced, in any substantial volume, until the work on the permanent detour had been completed; that the State failed to cause the subgrade work on the detour to be performed properly so that the surfacing placed thereon by Roberts failed and further delayed the opening of the detour; that as a result of the delay in making the construction site available, Roberts' plan for construction of the work was disrupted, an orderly and efficient construction operation was prevented, the work was extended into a period of unseasonable weather, and Roberts was subjected to excessive and unexpected costs, especially labor costs; that the State could have avoided the damage by requiring Gage County to have performed its work on or

before June 21, 1954, or by not awarding the contract; that Roberts was partly at fault in failing to thoroughly inspect the construction site, in failing to timely procure material meeting the contract specifications which would have permitted mitigation of the damage, and in other unspecified respects; and that Roberts was entitled to recover $16,594.45.

The assignments of error which require consideration are those relating to the sufficiency of the evidence to sustain the judgment against the State.

This was an action at law for damages for breach of contract. By agreement of counsel a jury was waived. Under such circumstances the findings of the trial court are equivalent to the verdict of a jury and will not be disturbed unless clearly wrong. Thus, in reviewing the evidence it must be considered in the light most favorable to the plaintiff, every controverted fact must be resolved in the plaintiff's favor, and the plaintiff must have the benefit of every inference that can reasonably be deduced therefrom. Capital Bridge Co. v. County of Saunders, 164 Neb. 304, 83 N. W. 2d 18. See, also, In re Appeal Roadmix Constr. Corp., 143 Neb. 425, 9 N. W. 2d 741.

The contract provided that Roberts would complete its work under the contract within 140 working days beginning June 21, 1954, or any prior date upon which construction operations were begun. The contract also provided for "reshaping" of the detour "after the completion of the grading operations by Gage County" and the spreading of a windrow of crushed rock "previously placed by Gage County." The contract further provided that telephone poles within the limits of the proposed construction "will be moved by their owners * * * in advance of grading operations. The contractor shall perform all work beyond the pole lines * * * after the pole lines have been moved."

On June 21, 1954, Roberts could not begin work on the north 2 miles of the project because the telephone

poles were in the way; Roberts could not begin work on the south 5 miles of the project because the detour was not available; and Roberts could not begin work on the detour because Gage County had not completed its work.

The evidence shows without dispute that at about the time the State was advertising for bids on the contract in question, it entered into a supplemental agreement allowing Gage County 90 working days in which to complete its work upon a part of the detour; that the grading work on the detour to be done by the county was not completed until sometime after July 17, 1954; that the delivery of the rock to be supplied by Gage County on the detour was not completed until August 26, 1954; that the telephone poles along the north 2 miles of the project were not moved until about August 9, 1954; and that much of the surfacing on the detour failed and required reconstructing and patching.

There is conflict in the evidence as to what caused the delay in this case but the evidence is sufficient to sustain the finding of the trial court that the State was responsible for a substantial amount of the delay that Roberts encountered in the performance of the contract.

The evidence shows that an orderly and progressive construction method, as distinguished from a piecemeal method, will permit the use of production-line or mass-production techniques which will produce an efficient use of labor and equipment and result in a lowering of costs; that labor costs per unit are 50 percent more in winter weather than in summer weather and that certain other costs are correspondingly higher; and that the delay in this case resulted in higher costs to Roberts than could have been reasonably anticipated.

Roberts computed its claim by subtracting its estimated cost of labor from its actual direct labor cost on the project, exclusive of extra work, and then adding to that figure additional expense which it attributed directly to the delay plus amounts for pay roll taxes and

insurance, general overhead expense, and profit. The judgment of the district court shows that the damages allowed Roberts were computed by deducting from the difference between the cost of labor as estimated by Roberts and the actual direct cost of labor on the project, exclusive of extra work, amounts for overtime pay, labor expense during rainy periods in August and October, labor expense when paving was shut down because of insufficient equipment, labor expense incident to rejection of defective material or work and drying out of the subgrade on the detour, labor performed prior to the starting date and after the acceptance of the work, and a deduction related to another item of the original claim which is not now in question. Thus, the trial court allowed as damages an amount equal to approximately one-half of the excess labor cost claimed by Roberts and made no allowance for pay roll taxes and insurance, other expense which Roberts attributed directly to the delay, general overhead expense, or profit.

Where it has been proved that damage has resulted and the only uncertainty is the exact amount, it is sufficient if the record shows data from which the extent of the injury can be ascertained with reasonable certainty. Colvin v. Powell & Co., Inc., 163 Neb. 112, 77 N. W. 2d 900. When it is established that a party has suffered damage, uncertainty as to the exact amount does not justify a denial of all recovery. The fact that the amount of damage may not be susceptible of exact proof or may be in a degree uncertain or difficult of ascertainment should not be a bar to any recovery. Jacobsen v. Poland, 163 Neb. 590, 80 N. W. 2d 891. See, also, McCree & Co. v. State, 253 Minn. 295, 91 N. W. 2d 713. The evidence in this case is sufficient to sustain the findings of the trial court with respect to damages.

The State's contention that the provision in the contract for an extension of time is the exclusive remedy

for delay resulting from causes beyond the control of the contractor remains to be considered.

This is a matter about which there appears to be a division of authority. See Annotation, 115 A. L. R. 65, and cases cited. See, also, 17 C. J. S., Contracts, § 502 b (3) (a), p. 1058; 12 Am. Jur., Contracts, § 351, p. 914. We believe that the better view is that this provision in the contract is not the exclusive remedy of the contractor and relates only to the right of the contractor to be relieved from the liability to pay liquidated damages in the event the work is not completed within the time specified in the contract. Edward E. Gillen Co. v. John H. Parker Co., 170 Wis. 264, 171 N. W. 61, 174 N. W. 546.

We believe that the correct rule is that a contractor has the right to recover damages resulting from delay caused by a breach of contract by the other party. Thus, where there is a breach of the contract by the owner or other party, and the breach of contract results in delay in the work of the contractor, and the delay in the work causes damage to the contractor, the contractor has a right of recovery in the absence of a "no-damage clause" or other provision to the contrary in the contract and even though the contract contains a provision for an extension of time.

The principal case relied upon by the State is United States v. Howard P. Foley Co., 329 U. S. 64, 67 S. Ct. 154, 91 L. Ed. 44. In the Foley case the Supreme Court of the United States held that an electrical contractor was not entitled to recover damages for delay in the performance of his work on an airport contract. Construction was delayed because soil that was to be used to build the runways and was obtained by dredging proved to be unstable and had to be replaced. The court pointed out that the work on the runways was done with great diligence and that no fault could be attributed to the parties doing that work. The court took the position that there could be no liability to the

contractor unless the contract included an unqualified warranty to make the runways promptly available.

In Peter Kiewit Sons' Co. v. United States, 151 F. Supp. 726, 138 Ct. Cl. 668, the Court of Claims interpreted the Foley case to mean that the government is liable if it is guilty of some act of negligence or willful misconduct which delays the performance of the contract and results in damages. If this is assumed to be a correct interpretation of the Foley case and a correct statement of the law, the evidence in this case is sufficient to sustain the trial court's finding that the State breached the contract and that Roberts was damaged by the delay resulting therefrom. For example, there is evidence that the State gave the telephone company only about 3 weeks' notice that it wanted the telephone lines moved and allowed Gage County 90 working days from May 20, 1954, in which to complete its work but made no effort to advise Roberts and the other bidders that it had done so.

The evidence in this case shows that the State failed to co-ordinate the work to be done on this project. The position of the State now is, substantially, that Roberts cannot complain about delays due to this reason. We do not accept the position of the State.

The time when the work is to be performed is a matter of importance to a contractor and it is a factor which influences the bidding. It may be assumed that a contractor who is seeking immediate work or who, as in this case, plans to realize a saving by performing the work under favorable weather conditions and in an orderly and efficient manner, will bid accordingly and the State will obtain the advantage of these facts through the bidding. In this case the State has had the benefit of competitive bids based upon the documents prepared solely by it and submitted to the bidders. It is only reasonable that the State should be held responsible for

the statements and representations which it made to the bidders.

The judgment of the district court is affirmed.

AFFIRMED.