IN RE APPEAL OF PARSONS CONSTRUCTION COMPANY. PARSONS CONSTRUCTION COMPANY, A CORPORATION, APPELLANT, V. STATE OF NEBRASKA ET AL., APPELLEES.
146 N. W. 2d 221

Filed November 11, 1966. No. 36277.

Mason, Knudsen, Berkheimer & Endacott, for appellant.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, and Warren D. Lichty, Jr., for appellees.

Heard before WHITE, C. J., SPENCER, BROWER, SMITH, and McCOWN, JJ., and C. THOMAS WHITE, District Judge.

SPENCER, J.:

This is an appeal from the disallowance of a claim for $43,574.48 to cover increased costs occasioned by the breach of certain conditions of a construction contract by the State of Nebraska. The claim was disapproved by the State Engineer and disallowed by the Auditor of Public Accounts and the Secretary of State of the State of Nebraska.

The contract out of which the claim arose involved the building of two viaducts, which will hereinafter be referred to as the south and north bridges. It was one of·several contracts included in a highway construction project on the Union-Omaha road (U. S. Highway No. 73-75) near Plattsmouth, Nebraska, in Cass County. One of the other successful bidders was Booth and Olson, Inc., a heavy highway contractor. Its contract covered grading, paving, and culvert work, and included the installation of the embankment fills for the bridges. It was necessary that certain culvert work and the embankment fills be completed before the plaintiff could begin work on its contract. The plans for the project used by the plaintiff as a basis for its bid had written above the profile for the bridge embankment the following: "Embankment to be constructed by the grading contractor before the bridge work begins."

All of the contracts on the project included an agreement that no work would be started prior to April 7, 1958. Subsequent to the acceptance of its bid, plaintiff notified the State that it desired a beginning date of April 7, 1958, on the south bridge, and of April 25, 1958, on the north bridge. These dates were approved by the State. Booth and Olson, Inc., who was to do the necessary grading and fill work before the plaintiff could be-

gin on its contract, also had a starting date of April 7,
1958. This fact was known to the plaintiff when it
submitted its schedule of work, but it contends that the
State, having approved its starting date, was obligated
to coordinate the work and require the grading con-
tractor to build the necessary embankments immediately.

On March 28, 1958, plaintiff notified Booth and Olson,
Inc., that it would like to start on the south bridge not
later than May 7, 1958, and on the north bridge not
later than May 21, 1958. On April 2, 1958, plaintiff
wrote the construction engineer for the State as follows:

"Re: Projects
FG-475 (2-3) Plattsmouth
IN-01-09(21) Millard

"Dear Mr. Graham:
"Following your suggestion we contacted Booth and
Olson, Inc., in regard to this grading and the abutment
fill on our projects near Plattsmouth and mailed you a
copy of our letter. We are enclosing a copy of their reply.
"While we want to cooperate in every way possible
with your office toward expediting the schedules on
this project, it is our opinion that your office will have
to take the responsibility of determining when the abut-
ment fills will be in place so we can start our work.
We have no power or authority over the contractors
who are to place these fills and feel that we would be out
of order to attempt to set their schedules.
"We have come to the conclusion that our construction
schedules on the above projects will have to be revised
and we will make our revised (revision) as soon as your
department notifies us when we can expect the abutment
fills to be in place. We are hoping that we can tenta-
tively set the starting time now on FG-475 (2-3) about
May 7, 1958, and IN-01-09(21) about June 7, 1958.

"Yours truly,
PARSONS CONSTRUCTION COMPANY
Earl G. Hawkins
President."

The Millard project referred to in the above letter is not included in this action. Project FG-475 (2-3) covers the two bridge projects involved herein.

There is a dispute as to when the sites were actually available and ready for the plaintiff. Plaintiff's testimony is that the job site was not available until August 4, 1958, and that it began work on August 11, 1958, on the south bridge, and on August 26, 1958, on the north bridge. The State's evidence is to the effect that the embankments for the south bridge were entirely completed by June 18, 1958. On June 9, 1958, the State notified the plaintiff that the south bridge site was available to them June 16, 1958.

The evidence for the State indicates that the last fill on the north bridge was not completed until July 22, 1958, but that there was ample work the plaintiff could have done previous to that date. In this respect, the State's evidence indicates that the work on the north bridge could have been started as soon as the south abutment on that project was built, which was June 4, 1958. The north bridge was the larger project, and there was sufficient area between the two embankments to permit work on the completed embankment and some of the area adjacent to it.

After the embankments were in, it was necessary for the State to stake the project before the plaintiff could begin its operation. There is a dispute as to when this was done. The specifications, which were a part of the plans used by the plaintiff in the submission of its bid, contain the following provisions on staking: "2. The department shall not be responsible for delays due to lack of grade or line stakes unless the contractor in moving on the work shall have given one week's notice and, thereafter, unless the contractor shall have given the engineer 48 hours' notice that such stakes would be needed." There is a dispute as to whether or not notice was ever given by the plaintiff to the State that the stakes were needed. It is the State's contention that the stakes were

set without notice as soon as possible after the project was ready for stakes.

The State further contends that the plaintiff did not start work previous to August 11, 1958, because of a carpenter's strike from June 9, 1958, to early in August 1958, which prevented it from doing so. On June 20, 1958, 4 days after plaintiff had been advised the south bridge site would be ready, plaintiff sent the State the following letter:

"Attention: Mr. L. O. Graham
             Construction Engineer
             Re: Project No. FG-475(2)
                 and F-FG-475(3) near
                 Plattsmouth, Nebraska
                 Carpenter Strike

"Dear Mr. Graham:

"We are unable to start the above referenced project because our firm as a member of the Associated General Contractors Employer's Association of Omaha has been a victim of strike by the Omaha Carpenter's District Council A. F. of L., C. I. O. and we are unable to start this job due to this action.

"As per the general conditions in the specifications governing our work, we hereby request an extension to the construction period of our contract equal to one and one-half the period of the actual construction time lost plus a period of re-organization of equipment and job personnel.

"At the conclusion of the above work stoppage, we will notify your office of the actual days required for the time extention requested.

                    "Yours truly,
                    PARSONS CONSTRUCTION COMPANY
                    Earl G. Hawkins Jr. (sgd.)"

On August 5, 1958, plaintiff wrote the State as follows:

"Attention: Mr. L. O. Graham
             Construction Engineer
             Re: Project FG-475(2) and
                 F-FG-475(3)

Near Plattsmouth, Nebraska
Carpenter's Strike·

"Dear Mr. Graham:

"As per my letter of June 20, 1958, I am requesting the following extensions of time to our contract due to labor difficulties or striking on the above mentioned job.

"On Monday, June 9, 1958, the carpenter's union started picketing all our jobs in a jurisdictional dispute over wages, working conditions, fringe benefits, etc. This strike continued until Wednesday, July 30, 1958 at which time the carpenter's union voted that evening to accept an offer the Associated General Contractors had offered and the strike was settled. This was a period of fifty two (52) days. In trying to arrive at the time lost due to this strike of this magnitude or length of time, it is quite difficult and at times almost impossible as we will not realize the full results of this strike until next winter when the construction season shuts or slows down. The Associated General Contractors have met and have tried to establish by joint discussion a realistic formula or approach to the amount of time actually lost to us due to the strike or dispute of this duration. It was determined and decided by this committee that the time actually lost due to shutting down of the job, trying to reorganize, re-hire men when starting up and considering that the time lost was during the normal construction season and therefore for every day of strike, the contractor would be delayed a day and a half in completing their work. This determination took into account the following conditions that would be encountered due to this prolonged strike.

"1. Re-location, re-distribution and securing of equipment.

"2. Re-hiring, locating necessary qualified personnel.

"3. Removing and replacing work already completed due to damage caused by the standing of the work for the duration of time.

"4. Additional work necessitated by work standing this period of time unattended.

"5. Time lost during the normal construction season and the resulting extension of time being or resulting in the late fall or winter which is normally questionable or undesirable working conditions.

"Of the above conditions, some of these do not apply to this project as we have not started work at the time of the strike due to the enbankments (sic) not being built. However, I think Item No. 5 and Item No. 1 involve this project pertaining to winter work and also the equipment available to start these various projects.

"I am, therefore, requesting an extension of time in the amount of seventy eight (78) days for this strike. If there are any questions on this, please contact me.

"Yours truly,

PARSONS CONSTRUCTION COMPANY

Earl G. Hawkins Jr. (sgd.)"

Plaintiff contends these letters were form letters sent out on all of its jobs and that the State knew the strike was restricted to the Omaha area and did not affect the Plattsmouth projects. However, the letters specifically refer to the Plattsmouth projects, and the State did allow extentions of time on the contract due to the strike. Plaintiff insists that the extension was granted because of the delay in providing the site and not because of the strike, but until the time of the trial plaintiff made no attempt to dispute the statement in the letter granting the extension. The reasonable inference from the State's evidence is that the strike was one of the major considerations in allowing an extension of working days.

It is plaintiff's contention that the State breached an expressed and implied contractual obligation to timely provide plaintiff with a place to work and to make the construction site available on April 7, and April 25, 1958, as agreed, and that this failure on the part of the State extended the time of performance of the contract beyond the construction season and over the winter of 1958,

substantially increasing plaintiff's cost of performance. Plaintiff's theory is that the State, having approved an April 7 starting date for the plaintiff, obligated itself to see that the grading contractor had the site prepared for the plaintiff when it was ready to move onto the job.

In Roberts Constr. Co. v. State, 172 Neb. 819, 111 N. W. 2d 767, we said: "A contractor who is damaged as the result of delay in the performance of the work which is caused by a breach of the contract by the other party may recover his damages in the absence of an express provision in the contract exempting the other party from liability."

The State contends that plaintiff fully understood at the time its bid was submitted that the actual bridge work could not be started until after the embankments had been constructed in accordance with the terms of the specifications, and that the grading contractor could not begin work on any part of the project until April 7, 1958. It further insists that any delays which occurred were the usual and normal ones for heavy construction work, and that the plaintiff was familiar with this type of construction and could reasonably expect such delays.

Plaintiff relies heavily on Roberts Constr. Co. v. State, *supra,* but that case is distinguishable on the facts from the instant one. In that case, the State specifically represented that subgrade preparations on a detour would be completed, and a windrow of rock placed along the length of the detour so that the contractor could begin work on June 21, 1954, and, without notice to Roberts Construction Company, granted an extension of time to the subcontractor, which extended the period 90 working days beyond the starting date. In the instant case, all of the contractors agreed that no work would be done on the project prior to April 7, 1958, and the plaintiff fully understood that it could not begin its major work until after the grading contractor had installed certain culverts and had made embankment fills, which would

take some time as is evident from plaintiff's letter of March 28, 1958.

This was a law action in which a jury was waived. The judgment of the trial court in an action at law where a jury has been waived has the effect of a verdict of a jury, and will not be set aside unless clearly wrong. Weiss v. Weiss, 179 Neb. 714, 140 N. W. 2d 15.

As indicated above, there was a considerable conflict in the evidence herein. It is not the province of this court in reviewing the record in an action at law to resolve conflicts in or weigh the evidence. Graves v. Bednar, 171 Neb. 499, 107 N. W. 2d 12.

In determining the sufficiency of the evidence to sustain the judgment in this case, it must be considered most favorably to the successful party, and so every controverted fact must be resolved in the State's favor and the State must have the benefit of any inferences reasonably deducible from the evidence. Smith v. Platte Valley Public Power & Irr. Dist., 151 Neb. 49, 36 N. W. 2d 478.

For the reasons given, the judgment herein is affirmed.

AFFIRMED.

BOSLAUGH, J., participating on briefs.