ERNEST C. SIEFFORD AND JOHN C. BEALL, DOING BUSINESS
AS BEALL-SIEFFORD CONSTRUCTION COMPANY, APPELLANTS,
v. HOUSING AUTHORITY OF THE CITY OF HUMBOLDT,
HUMBOLDT, NEBRASKA, ET AL., APPELLEES.
223 N. W. 2d 816

Filed December 5, 1974. No. 39382.

Allen L. Overcash of Woods, Aitken, Smith, Greer,
Overcash & Spangler, for appellants.

Otto Kotouc, Jr., John Kotouc, William L. Walker, and Earl Ludlam, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

This case involves a contract for the construction of a housing project at Humboldt, Nebraska, entered into between the appellant, Beall-Siefford Construction Company a joint venture consisting of John C. Beall and Ernest C. Siefford, hereinafter referred to as Contractor, and the appellee, Housing Authority of the City of Humboldt, Nebraska, hereinafter referred to as Housing Authority. The Housing Authority opened bids for the project on July 14, 1964. The Contractor's bid of $330,288 was low and was approved on August 17, 1964. Notice to proceed on September 8, 1964, was given the Contractor. According to the construction contract between the parties, the Contractor was to complete the dwelling units in 365 calendar days or by September 7, 1965, and the community building 65 days earlier. However, the project was not fully completed and accepted until January 5, 1966, meaning that there was an overrun of time of 162 days for the community building, and 119 days for the dwelling units.

In its amended petition filed on July 10, 1972, the Contractor sets out three causes of action, or, to be more precise, three theories of recovery, against the Housing Authority. The first cause of action is based on the theory of money due under the contract. It alleges the contract price and extras in the amount of $339,462.16, and that Housing Authority has paid $335,832.16 and still owes $3,630, being the amount of liquidated damages witheld by the Housing Authority for delay of the Contractor in performing the contract, and also claims an additional $70,630.21 for additional labor and material plus $2,009.05 for changes in the

.contract with respect to maintaining the lawns. In its second cause of action, based on the theory of quantum meruit, Contractor claims the sum of $72,639.26 for additional labor and materials, in addition to the $3,630 previously referred to as due under the written contract. Contractor's third cause of action was a claim of damages for breach of contract based on the theory of "acceleration" as hereinafter discussed. The amount of these damages is again alleged to be $72,639.26, which is claimed in addition to the $3,630 remaining under the original contract. The Housing Authority filed the appropriate responsive pleadings and the pretrial hearing was held upon the matter on June 8, 1973, at which time the issues were limited for purposes of trial and confined to six items, to-wit:

| | | |
|---|---|---|
| I. | Extra work for painting | $ 1,235.00 |
| II. | Extra work for carpenter | 330.00 |
| III. | Extra charges related to change order for overhead and profit | 1,080.00 |
| IV. | Extra charges for lawns and plantings | 2,009.05 |
| V. | General damages for breach of contract, including $5,000 for attorney's fees | 72,895.21 |
| VI. | Liquidated damages by formula described in the contract | 3,630.00 |

The parties also stipulated and agreed that a jury trial of the matter be waived. It was also agreed that to be considered at the trial was Housing Authority's cross-petition for $3,630 for liquidated damages.

Trial to the court of this matter was commenced on July 11, 1973. The court entered its judgment on September 21, 1973, finding that there was due the Contractor from the Housing Authority the sum of $6,874.05, together with interest thereon at the rate of 9 percent per annum, and dismissing the Contractor's causes of action Nos. II and III because of failure to sustain its

burden. The court also dismissed Housing Authority's cross-petition. Following the subsequent overruling of the motion for new trial filed by the Contractor, this appeal was perfected to this court. We affirm.

It is to be noted that the amount of the judgment awarded by the District Court of $6,874.05 is the precise total of Items I, IV, and VI of the court's pretrial order, and thus included a recovery by the Contractor of the liquidated damages previously withheld by the Housing Authority for delay in completion of the work in the amount of $3,630. The principal issue to be considered on this appeal is clearly stated by Contractor in its reply brief filed herein as follows: "As appellants' Statement of the Case pointed out, the *sole question* before this Court on appeal is whether the District Court should not have entered an order allowing appellants damages for breach of contract by reason of appellee refusing to grant appellants a time extension and forcing appellants to unduly accelerate their performance of the construction contract between appellants and appellees." (Emphasis supplied.) Contractor contends that the Housing Authority published for the purpose of bids, and supplied defective plans and specifications; and that after the project started Housing Authority changed the work, which disrupted Contractor's work. The Contractor further claims that the Housing Authority hindered and prevented it from performing its work in a timely manner, but at the same time refused to extend Contractor performance time in spite of its requests for same. Instead, it is alleged, the Housing Authority required Contractor to unduly accelerate its work under threat of default and termination of its work as a result of which the Contractor suffered substantial damages.

In its judgment the trial court made a specific finding that: "The evidence does not support a finding that the Plaintiffs were forced to accelerate their con-

tract performance by reason of the acts, demands, or the requirements of Defendant," and did not allow the damages claimed by the Contractor for the alleged "acceleration."

We first address ourself to an inquiry as to the nature of a cause of action based upon "acceleration" generally, whether there is such a doctrine recognized in the State of Nebraska, and further, whether under the specific facts of this case and the particular provisions of the contract between the parties, the Contractor herein is entitled to recover damages, providing the amount thereof and the proximate cause thereof are properly proved by the evidence herein.

The term "acceleration" is a very general term and certainly cannot be held to encompass reasonable and legal efforts on the part of the owner to induce his contractor, under a construction contract, to increase the pace of construction in order to complete the contract by the completion date agreed upon and set out in the contract between them. This would seem to be particularly true in the case where a contractor was substantially and continually behind his own established and projected schedule under the contract, and where the delay was not caused by a breach of the contract on the part of the owner, or willful hindrance of the contractor's work by the owner.

We have been unable to find any Nebraska cases discussing or applying the doctrine of "acceleration," at least by that name. Contractor points out in its brief, however, that federal authorities have recognized the obligation of the government to compensate construction contractors for undue acceleration of their work, and cites in support thereof the following cases: Continental Consolidated Corp. v. United States, 17 CCF, Par. 81,137 (1972); Electronic & Missile Facilities, Inc., ASBCA No. 9031 (July 23, 1964), 1963 BCA, Par. 4338; Appeal of Mechanical Utilities, Inc., ASBCA Nos. 7345

and 7466 (Oct. 31, 1962), 1962 BCA, Par. 3556. It appears that most of the cases applying and discussing the doctrine of "acceleration" are decisions or opinions of United States government administrative agencies such as Armed Services Board of Contract Appeals or Board of Contract Appeals, or Appeals to the Court of Claims or to the Federal Courts from such administrative agencies. They principally involve intrepretations of standard provisions contained in United States government construction contracts, mainly involving the "changes" clauses in such contracts which provide for: "An equitable adjustment if the changes caused an increase or decrease in the amount due under this contract, or in the time required for its performance." See, United States v. Rice, 317 U. S. 61, 63 S. Ct. 120, 87 L. Ed. 53 (1942); Crook Co. v. United States, 270 U. S. 4, 46 S. Ct. 184, 70 L. Ed. 438 (1926); United States v. Foley Co., 329 U. S. 64, 67 S. Ct. 154, 91 L. Ed. 44 (1946); Chouteau v. United States, 95 U. S. 61, 24 L. Ed. 371 (1877). It is clear from the above cases that the relief involved as a result of actionable "acceleration" in such contracts is limited to "an equitable adjustment," to-wit, an increase or decrease in the amount due under the contract or in the time required for its performance. We note with interest, however, that in Continental Consolidated Corp. v. United States, *supra*, a case cited by Contractor, the contractor was allowed certain damages for "acceleration" under the contract provision involved therein, but the court specifically stated: "Since it has been previously found that the contractor was *on schedule* at the time of the directives, and since there is no proof to show that at some later date appellant fell behind schedule, appellant is entitled to all of the acceleration costs computed by the Board, in the amount of $191,484." (Emphasis supplied.) The inference is clear from the above language that had the contractor not been on schedule, a different result

might well have obtained. In the instant case, the evidence is clear and undisputed that the Contractor was always continuously and substantially behind its own established progress schedule, and the Housing Authority made continuous efforts to impress that fact upon the Contractor.

We now turn to an examination of the status of the Nebraska law on the point under discussion. In its briefs and oral argument in this case, Contractor stresses the point that it is basing its claim for additional damages upon the alleged acts of the Housing Authority which it claims amount to undue "acceleration" of the time of performance of its contract, and not upon a claim for "delay." It insists that "acceleration" is just the opposite or reverse of "delay." While we can see a distinction between the two terms under certain circumstances, it would seem that in many cases, if not in most cases, the alleged "acceleration" is in fact the result of "delay," or, to put it differently, because of delay caused by or attributable to the owner, a contractor is of necessity forced to compress or speed up the work necessary to be completed before the contract completion date. There is no doubt that in this state delay caused by the owner under a construction contract might well be the basis for an action for damages for such delay on the part of the contractor. In Roberts Constr. Co. v. State, 172 Neb. 819, 111 N. W. 2d 767 (1961), we stated: "We believe that the correct rule is that a contractor has the right to recover damages resulting from delay caused by a breach of contract by the other party. Thus, where there is a breach of contract by the owner or the other party, and the breach of contract results in delay in the work of the contractor, and the delay in the work causes damage to the contractor, the contractor has a right of recovery *in the absence of a 'no-damage clause' or other provision to the contrary in the contract and even though*

*the contract contains a provision for extension of time."* (Emphasis supplied.) In Parsons Constr. Co. v. State, 180 Neb. 839, 146 N. W. 2d 211 (1966), this court again held that a contractor who is damaged as a result of delay in the performance of the work which is caused by a breach of contract by the other party may recover his damages *in the absence of an express provision in the contract exempting the other party from liability.* The court cited as authority for its ruling Roberts Constr. Co. v. State, *supra.*

In In re Appeal of Roadmix Constr. Corp., 143 Neb. 425, 9 N. W. 2d 741 (1943), we stated: "Generally, a contract between individuals and the state for construction of highways, and all other public improvements which the state is authorized to make, should be construed and liabilities determined by the same rule as governs contracts between individuals." We believe the same rule should be applied to the contract between the Contractor and the Housing Authority in this case; and we shall, therefore, at this point, review some of the more pertinent and important contract provisions contained in the contract between the parties.

The original signed contract between the parties was not introduced in evidence but the form of such contract with the applicable general and special conditions thereto is in evidence as exhibit 1, being attached to the "Form of Invitation for Bids." We shall assume a form of contract shown in exhibit 1 was duly and legally executed and at all times in full force and effect. Section 3a of General Conditions provides as follows: "Except as otherwise specifically stated in the Contract, the Contractor shall provide and pay for all materials, labor, tools, * * * and all other services and facilities of every nature whatsoever necessary to execute the work to be done under the Contract *and deliver it complete in every respect · within the specified time."* (Emphasis supplied.) Section 8c provides:

"Upon the approval of the breakdown, the Contractor shall, without delay, submit for approval in like manner a carefully considered Progress Schedule, prepared in accordance with a specimen form and instructions supplied by the Local Authority showing the proposed dates of starting and completing each of the various branches of the work, * * *." Section 10 entitled "Changes in the Work" provides that the local authority may make changes in the work by alterations, additions, omissions, etc., and that all such work shall be executed under the conditions of the original contract. Subsection c of Section 10 provides: "Except in an emergency endangering life or property, no change shall be made by the Contractor unless he has received a prior written order from the Local Authority countersigned by the Architect and approved on its face by the PHA, authorizing the change, and no claim for an adjustment of the Contract price or time shall be valid unless so ordered." Section 10h of General Conditions provides: "Subject to the provisions of Sections 11 and 13 of the General Conditions justifiable extensions of contract time because of changes or extra work, authorized by proper written order, *may* be granted by the Local Authority which order shall be approved on its face by the PHA." (Emphasis supplied.) Section 11 of General Conditions is entitled "Claims for Extra Cost" and subsection a thereof provides that if the Contractor claims that any instructions by drawings or otherwise involve extra costs or extensions of time, he shall, within 10 days after receipt of such instructions, and in any event before proceeding to execute the work, submit his protests thereto in writing to the local authority stating clearly and in detail the basis of his objections and further providing that no such claim shall be valid unless so made. Section 11d also provides that if on the basis of the available evidence the local authority determines that an

adjustment of the contract price or time is justifiable, the procedure shall then be as provided for in "Changes in the Work." Section 12 of General Conditions is entitled "Right of Local Authority to Terminate Contract" and provides: "If the Contractor should be adjudged a bankrupt * * *, or if he should persistently or repeatedly refuse or fail to supply enough properly skilled workmen or proper materials, * * * or fail to observe or perform the provisions of the Contract, * * * then the Local Authority may, by at least five days prior written notice to the Contractor, without prejudice to any other rights or remedies to the Local Authority, terminate the Contractor's right to proceed with the work. * * *." Section 13a of General Conditions entitled "Delays — Damages" provides generally that if the Contractor refuses or fails to prosecute the work with such diligence as will insure its completion within the time specified in the special conditions or any extension thereof or fails to complete said work within such time the local authority may by written notice to the Contractor terminate his right to proceed with the work or such part of the work as to which there has been delay, and specifically provides: "Until such time as the Local Authority terminates the right of the Contractor to proceed, the Contractor shall continue the work, and the Contractor shall pay to the Local Authority as fixed, agreed, any liquidated damages (it being impossible to determine the actual damages occasioned by the delay) for each calendar day of delay, until the work is completed, or accepted or until such time as the Contractor's right to proceed shall be terminated, the amount as set forth in the Special Conditions, and the Contractor and his sureties shall be liable for the amount thereof. In the event the Local Authority shall at any time subsequent to the date of completion, as established in the Contract or any amendment thereto, terminate the Contractor's

right to proceed, such termination shall not relieve the Contractor of the payment of the liquidated damages which have accrued from the completion date as established in the Contract, up to and including the date of the termination of the Contractor's right to proceed; Provided; that *the right of the Contractor to proceed shall not be terminated or the Contractor charged with liquidated damages* because of any delays in the completion of the work due to unforseeable causes beyond the control and without the fault or negligence of the Contractor, including but not restricted to Acts of God, * * * Acts of the Local Authority, * * * and unusually severe weather * * *, if the Contractor shall within 10 days from the beginning of any such delay (unless the Local Authority, with the approval of the PHA, shall grant a further period of time prior to the date of final settlement of the Contract) notify the *Contracting officer* in writing of the causes of delay, who shall ascertain the facts and the extent of delay, and the Local Authority shall, subject to prior approval of the PHA, extend the time for completing the work when in its judgment the findings of fact of the Contracting Officer justify such an extension, and his findings of fact thereon shall be final and conclusive upon the parties hereto." (Emphasis supplied.) Subsection b of Section 13 of General Conditions further provides: *"No payment or compensation of any kind shall be made to the Contractor for damages because of hindrance or delay from any cause in the progress of the work, whether such hindrances or delays be avoidable or unavoidable."* (Emphasis supplied.) The contract also contains a part entitled "Special Conditions." Section 3 of Special Conditions is entitled "Liquidated Damages," and sets out the formula for determining the amount of such damages.

The foregoing constitutes a résumé of some of the more important provisions of the voluminous contract

entered into between the parties. We shall examine some of those provisions with the purpose of determining whether under the contract between the parties the Contractor is entitled to maintain an action against the Housing Authority and recover additional damages for the reasons alleged by the Contractor in its petition.

We first consider the provision in the contract that: "No payment or compensation of any kind shall be made to the Contractor for damages because of hindrance or delay from any cause in the progress of the work, whether such hindrances or delays be avoidable or unavoidable." This provision, on its face, would seem to preclude the Contractor from recovering such damages in this case. The Contractor argues, however, that this provision cannot possibly apply to damages for delays caused by or attributable to the acts of the other party to the contract. For the purpose of this discussion we shall assume, but not concede, that the evidence in this case sustains the contentions of the Contractor on these points, but we also point out that the trial court did not so find. An interpretation of a similar contractual provision was involved in the case of Mack v. State of New York, 202 N. Y. S. 344, 122 Misc. 86 (1923). In that case the court stated: "The language of the contracts furnishes a complete answer to claimants' contention. It does not absolve the state from liability for the consequences of *reasonable* delays but of delays or hindrances for any cause. * * * It was evidently for the purpose of eliminating the vexatious question of what delays might be regarded as reasonable and what unreasonable that the risk of all delays was placed by the contracts upon the contractors." In Ericksen v. Edmonds School Dist. No. 15, 13 Wash. 2d 398, 125 P. 2d 275 (1942), the court held that where the contract stated positively that the building contractor should not be entitled to damages on account

of delays from any cause and stated that, if delays were occasioned by any act or omission of the owner, additional time for completion of the work should be allowed contractor, if contractor should give written notice, contractor was not entitled to recover from owner for damages sustained because owner allegedly retarded the progress and performance of the work in its proper order and sequence, irrespective of any notice to owner for an extension of time, and further that the provision intended that an extension of time was the contractor's sole remedy for delays encountered in the performance of the contract. Further, in Psaty & Fuhrman, Inc. v. Housing Authority of City of Providence, 76 R. I. 87, 68 A. 2d 32 (1949), the Supreme Court of Rhode Island held that where a "no-damage" clause in contract with housing authority for construction of a housing development provided that contractor should not recover damages because of hindrance or delay from any cause in the progress of the work, whether or not delays were avoidable, the contractor was prohibited from recovering damages for delay caused by arbitrary or unreasonable conduct of the authority, in the absence of any claim of concealment, misrepresentation, or fraud, and could recover only in case of delay or hindrance caused by fraud, bad faith or malicious intent. We are of the opinion that under the above-cited authorities contractor is precluded, by virtue of the contractual provision above recited, from recovering damages for delay caused by the Housing Authority, if any. Nevertheless we shall proceed to consider other provisions of the contract between the parties.

Contractor contends that the refusal of the Housing Authority to grant it certain extensions of time, which it claims it was entitled to under the terms of the contract, because of the redesign of building A-1, and delays occasioned by unusually severe rainfall, amounted

to a breach of the contract on the part of the Housing Authority. Let us examine that contention. To begin with, there are two provisions in the contract dealing with the extension of time. Section 10h, previously cited, provides that subject to the provisions of Sections 11 and 13 of General Conditions justifiable extensions of time because of changes or extra work, authorized by proper written order, *may* be granted by the local authority, which order shall be approved on its face by the PHA. It is obvious from the word "may" that under that section an extension of time is permissive, and not mandatory. However, under Section 13 of General Conditions it is provided: "* * * that the right of the Contractor to proceed shall not be terminated or the Contractor charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond the control and without the fault or negligence of the Contractor, including but not restricted to * * * Acts of the Local Authority * * * and unusually severe weather * * *, *if* the Contractor shall within 10 days from the beginning of the delay (unless the Local Authority, with the approval of the PHA, shall grant a further period of time prior to the date of final settlement of the Contract) notify the Contracting Officer in writing of the causes of delay, who shall ascertain the facts and the extent of delay, and the Local Authority shall, subject to prior approval of the PHA, extend the time of completing the work when in its judgment the findings of fact of the Contracting Officer justify such an extension, *and his findings of fact thereon shall be final and conclusive upon the parties hereto.*" (Emphasis supplied.) It is clear that the above provision does not confer a right to damages upon the Contractor, but merely states that the right of the Housing Authority to proceed under the termination clause or the right to charge the Contractor with liquidated damages because of delays shall

not be invoked if, after a hearing before the contracting officer, an extension of time is granted. His findings of fact shall be final and conclusive.

It appears from the record that the Contractor did properly request an extension of 40 days with reference to the change of plans in building A-1, and also that at another time an extension of 21 days was requested because of the construction of a retaining wall not originally contemplated. At the time of the request, the Housing Authority denied the extensions of time, it apparently being its policy to defer such requests until the end of the contract. However, it is clear from exhibit 148, received in evidence during the trial, that a hearing was held before Ivan C. Haith, the contracting officer, to ascertain the causes of delay and that findings of fact were made by him on March 4, 1966, on the various claims of the Contractor. On April 21, 1966, a notification on the assessment of liquidated damages was issued by the Housing Authority, to which was attached the findings of fact by the contracting officer Haith. At that time the Contractor was granted 25 days extension of time because of inclement weather and was assessed $3,630 as liquidated damages under the formula in the contract based upon a delay of 119 days in the completion of the dwelling units and 162 days in the completion of the community building. What Contractor appears to overlook, however, is that the trial court in its judgment in this matter restored to it all the days for which it had been assessed liquidated damages, by restoring the $3,630 previously withheld from it by the Housing Authority as liquidated damages. In effect, therefore, Contractor did receive considerably more time extensions than requested; and, considering the fact that it had received additional monetary compensation by virtue of at least 10 of the 14 change orders involved, and additional amounts claimed for painting, etc., which were included in the

judgment of the trial court, it may well be argued that the trial court in this case did make an "equitable adjustment," even under the rule set forth in the federal cases referred to previously.

There are, however, additional cogent and controlling reasons why Contractor cannot prevail in its appeal. The law is well established that damages which are uncertain, conjectural, or speculative as to the existence, nature, or proximate cause thereof are not the basis of a recovery. Bitler v. Terri Lee, Inc., 163 Neb. 833, 81 N. W. 2d 318 (1957); Western Land Roller Co. v. Schumacher, 151 Neb. 166, 36 N. W. 2d 777 (1949). Damages for breach of contract that are susceptible of definite proof are recoverable only to the extent that the evidence affords a basis of ascertaining their amount in money with reasonable certainty. Kroeger v. Franchise Equities, Inc., 190 Neb. 731, 212 N. W. 2d 348 (1973). See, also, Rambo v. Galley, 188 Neb. 692, 199 N. W. 2d 14 (1972). It is clear from the record that Contractor endeavored to prove the amount of damages sustained by the alleged "acceleration" through the expedient of deducting from the amount of its actual labor costs on this project, for which it kept records, the amount of its estimated labor costs upon which it submitted its bid for the contract in question. To this amount it added certain items of overhead and profit. This method of computation of damages would appear to be highly speculative and conjectural. In fact it was specifically disapproved in the case of Continental Consolidated Corp. v. United States, *supra,* a case cited as authority by Contractor. In that case, the Court of Claims, citing the case of F. H. McGraw & Co. v. United States, 130 F. Supp. 394 (1955), stated: "This method of proving damages is by no means satisfactory, because, among other things, it assumes plaintiff's costs were reasonable and that plaintiff was not responsible for any increases in costs, and *because it assumes plain-*

*tiff's bid was accurately computed, which is not always the case, by any means."* (Emphasis supplied.)

The only testimony on the issue of proximate cause of the claimed damages came from the members of the joint venture contracting company. John C. Beall testified that the additional amount of damages was the direct and proximate result of the acceleration and that the difference in labor costs in the amount of $49,442 was caused "solely by that order to accelerate." Ernest C. Siefford, who testified by affidavit at the trial, stated in his affidavit: "In my opinion, the sole reason we were behind was the difficulties caused us by the deficiencies in the plans which I have described and the problems resulting from the redesign of building A-1's foundation." We doubt very much if it can be said that any order to accelerate was the sole proximate cause of the additional costs and expenses incurred by the Contractor. The record is replete with evidence that the Contractor was understaffed during the entire course of construction. Daily construction reports of the progress of the project were offered and received in evidence and are too voluminous to set out in full; but they reveal, in graphic language, the shortage of labor, particularly of carpenters and plumbers, on the project. There is also evidence contained in letters between the parties and minutes of the meetings held by the Housing Authority. The following examples are typical: In a letter from the architects to the contracting officer under date of October 29, 1964, it is stated: "The work crew up until now seems inadequate for the size of this project. The contractor has had in his employ the average of 4 carpenters, 2 bricklayers and 3 laborers. In the mechanical division he has had no more than 2 plumbers working and they are holding up the project at this time." The minutes of the meeting of the Housing Authority on December 2, 1964, contain the following statement: "Mr. Vrana gave the

reason for the slow progress as the Contractor not having enough work crew which resulted in a deficiency in the progress and 'No good Job Management' by the Contractor." Daily construction report for November 24, 1964, states: "Up until today they have only had two carpenters and two laborers framing and this is not enough. Progress in this department has been very slow. Up to today they have only partially framed one roof on bldg A 4 and have only the stud walls up on bldg A 1. The progress is ridiculous." The report for February 9, 1965, states: "Today the plumbers added one more man. So now there are 4 plumbers, but they are not first class plumbers, I would say it is more like one plumber and three helpers." The daily construction report for April 20, 1965, states: "If this job was going any slower it would be standing still, they don't have any help that can do the work properly, for instance, Bldg A 1, could have been started long ago but they don't seem to have enough help to get at it.? Concrete is going to be poured in the west half of A 2 tomorrow. I hope." The report of August 24, 1965, states: "The plumbers left about 3:30 PM today? The painters do not get to work until about 8:45 Am in the morn. There are only three painters working and we should have about a dozen working on a job of this size." The report of October 22, 1965, states: "It is a shame such a beautiful day yesterday and to day and the side walk forms are ready and the walks could be poured on the North side of A 2 and between A 2 and A 3 but they do not have enough manpower hired to do the work." Report of October 25, 1965, states: "To day was a very nice day and a lot of yard work could be done but no more help was here, in fact we have one less carpenter working as Russ has gone to California."

The trial court had all this evidence and much more before it and could very well have found that the cause

of the damages claimed by the Contractor was not any acceleration illegally required by the Housing Authority, but was, in fact, the result of the failure of the Contractor to maintain an adequate work force, as required by the contract. The law is well established that evidence not directly contradicted is not necessarily binding on the triers of fact, and may be given no weight where it is inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence. Triers of fact have the right to test the credibility of witnesses by their self-interests and weigh undisputed parol testimony against facts and circumstances in evidence from which a conclusion may properly be drawn that the parol testimony is false. First Nat. Bank of Omaha v. First Cadco Corp., 189 Neb. 734, 205 N. W. 2d 115 (1973); Batterman v. Richardson, 189 Neb. 303, 202 N. W. 2d 613 (1972). We think it is clear from the record that the Contractor failed in its proof of the amount of damages claimed by it and also failed to prove that such damages were the proximate result of any acceleration attributable to the Housing Authority.

We have held that where a law action is tried to the court without a jury, the finding of the court has the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. First Nat. Bank of Omaha v. First Cadco Corp., *supra.* In this case we do not believe the findings of the trial court were clearly wrong, and we therefore conclude that the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.