SCOT THOMPSON, DOING BUSINESS AS VIVID PAINTING, APPELLEE,
v. VALLEY CORPORATION, A NEBRASKA CORPORATION, APPELLANT.

528 N.W.2d 352

Filed February 21, 1995.   No. A-93-524.

Robert J. Becker, of Stalnaker, Becker, Buresh, Gleason & Farnham, P.C., for appellant.

Larry R. Forman, of Dixon & Dixon, P.C., for appellee.

IRWIN and MILLER-LERMAN, Judges, and NORTON, District Judge, Retired.

MILLER-LERMAN, Judge.

Valley Corporation (Valley), a Nebraska corporation, appeals the decision of the Douglas County District Court affirming the decision of the Douglas County Court, which held that Valley had unilaterally terminated its contract with Scot Thompson, doing business as Vivid Painting (Thompson),

without just cause and awarded damages to Thompson. Because we find that the record does not support the county court's order, we reverse and remand.

## FACTS

Valley served as the general contractor to the city of Omaha for the construction of an addition to the Sherman Community Center (the Project), located at 5701 North 16th Street in Omaha. On April 16, 1991, Valley, as general contractor, and Thompson, as subcontractor, entered into a standard subcontract agreement (the Agreement) which provided for Thompson to supply all labor and materials necessary to complete all interior and exterior painting and wall covering in accordance with the specifications for the Project for a contract price of $5,400. The Agreement specified that

> [t]he work called for in this contract shall be performed promptly as requested by the contractor. The subcontractor agrees to complete his work in sufficient time and in such a manner to enable the contractor to complete the work in its contract with the Owner no later than November 21, 1991.

The Agreement further provided in paragraph XV:

> [I]n case the Sub-Contractor shall fail to correct, replace and/or re-execute faulty or defective work done and/or materials furnished under this contract, when and as required by the Contractor, or shall fail to complete or diligently proceed with this contract within the time herein provided for, the Contractor upon three days' written notice to the Sub-Contractor shall have the right to correct, replace and/or re-execute such faulty or defective work, or to take over this contract and complete same, and to charge the cost thereof to the Sub-Contractor, together with any liquidated damages caused by a delay in the performance of this contract.

At trial, the parties described the course of the work on the project as follows: According to Valley's work records, Thompson commenced work on the Project on June 19, 1991, and continued to work in a sporadic fashion throughout the summer. Valley's work log shows that Thompson and/or

someone from his crew showed up at the Project site 18 times between June 19 and September 4. In his testimony at trial, Thompson attributed his inconsistent work schedule and lack of progress to poor weather conditions and the simultaneous work efforts of Valley and Valley's other subcontractors. However, Valley's work log indicates that Thompson and his crew did not work on the Project on many days that were dry and clear.

During the time Thompson was working on the Project, the city's overall coordinator for the Project, David Johnson, expressed dissatisfaction with Thompson's performance and told Valley that Thompson would have to correct the work before the city would accept it. It is not clear whether Valley apprised Thompson of Johnson's dissatisfaction at the time he brought it to Valley's attention.

A. Richard Heupel II, Valley's project manager, testified that Thompson was on the "critical path" as of August 12. The term "critical path" refers to a construction timetable set up by the project manager to enable the project to be completed on time. Heupel explained at trial that every contractor falls within the critical path somewhere within his job and that the completion of the work which is on the critical path controls when the next phase of the project can begin.

After determining that Thompson's performance was on the critical path, Heupel called Thompson on August 15 but received no response. Thompson finally returned Heupel's call on August 21 and told him that Thompson and his crew would be at the Project on August 22. Thompson and his crew showed up and worked at the Project on August 22, 23, and 24.

On August 26, when Thompson did not show up to work on the Project, Heupel called Thompson and informed him that he was not performing the painting work in a timely and satisfactory manner and that he was holding up the progress on the Project. Heupel told Thompson that he had 3 days to complete the interior painting on the Project and to remedy all deficiencies in the quality of the work previously completed or Valley would exercise its right to take over the subcontract as provided in paragraph XV of the Agreement. Valley reduced the contents of the August 26 telephone conversation to writing

in a letter dated August 27, 1991. The letter demanded that Thompson complete all interior painting and remedy all deficiencies by 5 p.m. on August 29.

Although Valley ostensibly gave Thompson 3 days to complete the interior work, Valley allowed Thompson to work on the Project for an additional week. On Wednesday, September 4, when no one from Thompson's crew showed up to work on the Project, Valley informed Thompson in writing that it was exercising its right to take over the subcontract due to Thompson's failure to complete the interior painting pursuant to Valley's request of August 26. The parties agree that Thompson had not completed the interior painting by September 4.

On September 9, Thompson made a written demand to Valley for the $5,400 provided for in the Agreement. Thompson contended that under the Agreement, he had until November 21 to complete the work; that Valley had unilaterally terminated the Agreement without just cause; and that at the time of termination, he had substantially completed the work under the contract.

On September 11, Valley contracted with another painter to supply all materials and labor necessary to complete the painting and to correct faulty interior painting on the contract for a contract price of $5,300.

Thompson filed a breach of contract action against Valley on March 19, 1992, in the Douglas County Court to recover the contract price of $5,400 for substantially completing the labor contracted for under the Agreement. Valley acknowledged the existence of the Agreement, but denied owing Thompson the contract price due to the facts that Thompson did not accomplish the work in a workmanlike manner and that Valley was forced to expend the sum of $5,741.45 to have the job completed and repaired. Valley asked for a setoff of $5,300 and counterclaimed for $341.45.

The trial court found that Valley had breached the Agreement and awarded Thompson $5,400 plus costs and dismissed the counterclaim. Apparently, the trial court interpreted the Agreement to provide that Thompson complete the painting in such time as to allow Valley to complete its

obligations on the Project by November 21, 1991. The district court affirmed the decision of the county court, but recomputed the damages to equal $4,561.92, which included only compensation for labor and materials actually expended and prorated profits for the percentage of the Project completed. Valley appeals.

## SCOPE OF REVIEW

■ In cases where the district court acts as an intermediate court of appeals, both the district court and this court generally review appeals from the county court for error appearing on the record. Neb. Rev. Stat. §§ 25-2733 (Reissue 1989) and 25-1911 (Cum. Supp. 1994).

■ The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Larsen v. First Bank*, 245 Neb. 950, 515 N.W.2d 804 (1994); *Rigel Corp. v. Cutchall*, 245 Neb. 118, 511 N.W.2d 519 (1994); *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993).

## ANALYSIS

The Agreement controls the commercial relationship between the parties. Thompson attached the Agreement to his original complaint and also offered the Agreement as exhibit 1 at trial. Paragraph III of the Agreement, which is the provision of the Agreement directly at issue, provides as follows:

> The work called for in this contract shall be performed promptly as requested by the contractor. The subcontractor agrees to complete his work in sufficient time and in such a manner to enable the contractor to complete the work in its contract with the Owner no later than November 21, 1991.

The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Larsen, supra*; *Rigel Corp., supra*; *Baker's Supermarkets, supra*.

■ In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Kropp v.*

*Grand Island Pub. Sch. Dist. No. 2*, 246 Neb. 138, 517 N.W.2d 113 (1994); *Baker's Supermarkets, supra.* A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Kropp, supra*; *Plambeck v. Union Pacific RR. Co.*, 244 Neb. 780, 509 N.W.2d 17 (1993); *Drain v. Board of Ed. of Frontier City*, 244 Neb. 551, 508 N.W.2d 255 (1993). A determination as to whether ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties; thus, the fact that the parties to a document have or suggest opposing interpretations of the document does not necessarily compel the conclusion that the document is ambiguous. *Murphy v. City of Lincoln*, 245 Neb. 707, 515 N.W.2d 413 (1994); *Baker's Supermarkets, supra.*

Paragraph III of the Agreement specifies that (1) Thompson will perform the work promptly at Valley's request and (2) Thompson will complete his work in such a manner that the contractor's work will be completed no later than November 21, 1991, thus requiring Thompson's work to be completed by that date. We do not find these two provisions of paragraph III to be inconsistent. Nebraska law clearly provides that a contract must be construed as a whole and, if possible, effect must be given to every part thereof. *Baker's Supermarkets, supra*; *Crowley v. McCoy*, 234 Neb. 88, 449 N.W.2d 221 (1989). Our understanding of the plain language of both provisions of paragraph III, when read together, is that Thompson agreed to complete the painting at Valley's request, and to permit Valley to meet its contract with the owner, no later than November 21, 1991, absent a request for earlier performance. This is in accord with the well-settled law in Nebraska that the terms of a contract are to be accorded their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them. *Murphy, supra*; *Fritsch v. Hilton Land & Cattle Co.*, 245 Neb. 469, 513 N.W.2d 534 (1994); *Rigel Corp., supra.* Further, we do not believe that any of the other provisions of the Agreement are susceptible of conflicting interpretations. Therefore, we find the Agreement to be unambiguous. For this reason, the intent of the parties is not at issue, and we ignore the

various interpretations of the provisions of paragraph III which the parties suggest. See, *Murphy, supra*; *Baker's Supermarkets, supra*.

Provision (1), which gives Valley the ability to request that Thompson perform the work promptly notwithstanding the November 21 completion date, is in the nature of an acceleration clause. Acceleration clauses are common in construction contracts. See, e.g., 48 C.F.R. § 52.243-4 (1994) (setting forth the federal government's general acceleration provision for construction contracts); *Johnson Controls, Inc. v. National Valve & Mfg. Co.*, 569 F. Supp. 758 (E.D. Okla. 1983); *Hensel Phelps Constr. Co. v. King County*, 57 Wash. App. 170, 787 P.2d 58 (1990).

The Nebraska Supreme Court recognized the doctrine of acceleration of performance under construction contracts in *Siefford v. Housing Authority*, 192 Neb. 643, 223 N.W.2d 816 (1974). The *Siefford* analysis recognized that most contract acceleration cases involve a subcontractor or contractor plaintiff who is making a claim against a general contractor or owner defendant for costs or damages the plaintiff incurred as a result of defendant's decision to accelerate plaintiff's performance under an express acceleration or "change in performance" clause. In such cases, although acceleration is provided for under the contract, the defendant may argue that no extra money is due plaintiff because plaintiff failed to give timely notice of claims or because the claimed acceleration costs merely reflect plaintiff's attempts to perform preacceleration contractual obligations. *Johnson Controls, Inc., supra*. It is commonplace that acceleration clauses provide for liquidated or contractual "damages" for acceleration. See, e.g., *Continental Consolidated Corp. v. United States*, 17 CCF, Par. 81,137 (1972). In cases where acceleration is expressly provided for in the contract, but liquidated damages for acceleration are not provided for in the contract, a subcontractor or contractor which is successful in proving damages due to unanticipated acceleration may be awarded relief which is generally limited to an equitable adjustment of the amount due under the contract. See, e.g., *United States v. Rice*, 317 U.S. 61, 63 S. Ct. 120, 87 L. Ed. 53 (1942); *Crook Co. v. United States*, 270 U.S. 4, 46 S. Ct.

184, 70 L. Ed. 438 (1926). See, also, *Omaha P. P. Dist. v. Darin & Armstrong, Inc.*, 205 Neb. 484, 288 N.W.2d 467 (1980).

In this case, the subcontractor, Thompson, sued the general contractor, Valley, for the full contract price. The action resulted from Valley's request of Thompson based on the existence of an acceleration clause in the Agreement to accelerate his performance. Thompson did not comply with Valley's request, and Valley terminated the subcontract. The Agreement indicates that Valley's request for prompt performance was anticipated by the terms of the Agreement and did not constitute an actionable acceleration. Parenthetically, our review of the facts shows that Valley initially sought from Thompson something in the nature of adequate assurance that he would complete the contract in a timely and satisfactory manner, rather than seeking an acceleration of performance. Cf. Neb. U.C.C. § 2-609 (Reissue 1992) (providing parties to a sales contract the right to demand adequate assurance of performance when reasonable grounds for insecurity arise; failure of party upon which demand is made to provide adequate assurance within a reasonable time constitutes a repudiation of the contract).

█ A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Murphy v. City of Lincoln*, 245 Neb. 707, 515 N.W.2d 413 (1994); *Drain v. Board of Ed. of Frontier Cty.*, 244 Neb. 551, 508 N.W.2d 255 (1993); *Gables CVF v. Bahr, Vermeer & Haecker Architect*, 244 Neb. 346, 506 N.W.2d 706 (1993). The provisions of the Agreement expressly provided Valley with the terms by which to request Thompson to promptly perform the work contracted for under the Agreement at Valley's request. The Agreement did not provide for a different or greater fee where the acceleration clause was invoked. Given Thompson's erratic work schedule, the challenged quality of his work, and the existence of the critical path, Valley's reliance on the acceleration and termination features of the Agreement was permissible under the contract.

Given the unambiguous terms of the Agreement, the record does not show a breach by Valley. For these reasons, we reverse the decision of the district court, affirming the decision of the

county court, and remand the cause to the district court for treatment consistent with this opinion.

REVERSED AND REMANDED.