ETOILY COOK, APPELLEE, V. SAMUEL M. PATTERSON, APPEL-
LANT.

FILED MAY 10, 1935. No. 29184.

*Clarence A. Davis, Wilber Aten* and *John F. Fults,* for
appellant.

*Stevens & Stevens, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY,
PAINE and CARTER, JJ.

EBERLY, J.

This was an action brought by the appellee (plaintiff)
against the defendant (appellant) in the district court for
Furnas county, Nebraska, for damages for personal in-
juries arising out of an automobile accident alleged to
have been caused by the negligent operation of the auto-
mobile of the defendant.

A trial to a jury resulted in a verdict and judgment for
plaintiff. From the order of the trial court overruling his
motion for a new trial, the defendant appeals.

The appellant's brief presents two questions for our
consideration. But one of these, misconduct of the jurors,
needs to be considered. Filed in support of a motion for
a new trial is an affidavit of one of the jurors, which is,
in part, as follows:

"Calvin Beedle, being first duly sworn, deposes and says
that on the 14th day of November, 1933, he was duly
chosen as a juror in the above entitled case, and sat
throughout the said trial and took part in reaching the
jury verdict thereafter rendered.

"That about July, 1931, he was working near Edison, Nebraska, and that in the course of his employment, he received a bad fall, striking the ground and injuring his head and among other things fracturing his skull and injuring his head at about the same place Mrs. Cook's head was hurt; that he suffered severe pain from this accident for several months after it happened; that he has never completely recovered from the accident; that his head is still sore and painful and he cannot now touch the place where the fracture occurred without pain; that he was paid compensation and he finally settled for these injuries, although they still cause him trouble; that the doctor who took care of him was Dr. Miller at Arapahoe, Nebraska, and that the doctor says that at sometime in the future he may still have trouble with his head injury and some day may have to have an operation.

"That some of the jurors knew that he had had this injury and asked him about it in the jury room and he told them all of the foregoing things and told them that in his opinion it was too soon to tell how much Mrs. Cook was hurt, that nobody could tell about such an injury for a year or two; that it would be better to adjourn the trial a year and wait and see how much she was hurt; that in arriving at a verdict he considered his personal experience and the knowledge of his own injury and the seriousness of a skull fracture as he knew it from his own case; that some of the other jurors whose names affiant does not know said in the jury room that they knew Mrs. Cook and knew about her condition and she had been different ever since the accident, and that they did not think she ever had been 'quite right' since the accident, and that they didn't think she was now, and that these statements were discussed by the jury in the course of arriving at a verdict."

Supporting affidavits are contained in the bill of exceptions, and there is no opposing proof.

"Under modern conditions, however, a verdict must be based solely on the evidence introduced in the case and the

personal knowledge of the jurors as to the matters and facts involved will not be allowed to enter into their deliberations upon the verdict, whether such knowledge be the knowledge of one or of all the jurors. If a juror knows any fact relevant to the case he should be sworn and give his testimony in open court. * * * This general rule is based on the principles that the relevancy and competency of all evidence should be passed on by the court before being submitted to the jury; that testimony can only be legally given under oath, and with the right to have it sifted by cross-examination by the adverse party, and met by countervailing proof; and that the court and parties have the right to know upon what evidence the verdict was rendered." 17 Standard Ency. of Procedure, 537-539.

These general principles were approved, and the limits of the doctrine were laid down by Reese, C. J., in *Harris v. State,* 24 Neb. 803.

In *Ewing v. Hoffine,* 55 Neb. 131, this court announced the rule applicable to the facts then before it in the following form:

"Jurors may not state to fellow jurors, while considering their verdict, facts relative to issues in the case within their own personal knowledge, but not of the evidence introduced. They should make the same known during the trial, and, if desired, testify as witnesses. *Wood River Bank v. Dodge,* 36 Neb. 708; *Richards v. State,* 36 Neb. 17, followed."

See, also, *Chicago, B. & Q. R. Co. v. Krayenbuhl,* 65 Neb. 889; *Falls City v. Sperry,* 68 Neb. 420; *Kelley v. Adams County,* 113 Neb. 377; *Meyer v. Omaha & C. B. Street R. Co.,* 125 Neb. 712.

In the instant case, with the distinct and undisputed showing that this juror not only had this prior experience and knowledge, and based his approval of the verdict returned at least partly thereon, but that it was likewise used to influence his fellow jurors in arriving at their verdict, we are driven to the conclusion that, consistent

with the principles announced in the cases referred to, the verdict and judgment must be set aside.

The judgment of the district court is, therefore, reversed and the cause remanded for further proceedings according to law.

REVERSED.