SHADOW ISLE, INC., A CORPORATION, DOING BUSINESS AS ANKONY
SHADOW ISLE RANCH, APPELLEE AND CROSS-APPELLANT, V.
GRANADA FEEDING COMPANY, A DIVISION OF AFC, INC., A
CORPORATION, APPELLANT AND CROSS-APPELLEE.
411 N.W.2d 331

Filed August 28, 1987.    No. 85-729.

Donn C. Raymond of Raymond, Olsen, Ediger & Ballew,
P.C., for appellant.

Paul W. Snyder of Van Steenberg, Brower, Chaloupka,
Mullin & Holyoke, P.C., for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and
GRANT, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.
This case arises out of a controversy concerning an
agreement for the use of water from two wells on the
defendant's land.

The plaintiff, Shadow Isle, Inc., and the defendant,
Granada Feeding Company, own adjacent tracts of land in
Scotts Bluff County, Nebraska. In 1973 the predecessors in title
of the parties executed a "Deed and Easement of Water Right."
American Beef Packers, Inc. (American), the predecessor in
title of the defendant, was the owner of the land referred to in
the deed as "Tract A." Colossal Cattle Company (Colossal), the

predecessor in title of the plaintiff, was the owner of the land referred to in the deed as "Tract B."

Under the terms of the deed, American conveyed to Colossal, and its successors and assigns, the right to use water from the wells described as wells 2 and 3 and located on Tract A. Colossal, on behalf of itself, and its successors and assigns, conveyed to American, and its successors and assigns, a perpetual easement appurtenant to and running with Tract A, for the purpose of allowing the continued use of the main waterline running from well 3 over Tract B.

Paragraph 2 of the deed provides:

> 2. Both American and Colossal covenant for and on behalf of themselves, their successors and assigns and which [sic] each other and their respective successors and assigns, that both parties will at all times keep and maintain or cause to be kept and maintained the wells and the lines thereto in good order and free from contamination and *all costs of maintenance and repair on said wells and lines leading therefrom will be borne by the parties hereto*, their successors and assigns, *in the ratio that the parties hereto*, their successors and assigns, *use the water from said wells as such use is determined between the parties hereto*, their successors and assigns.

(Emphasis supplied.)

The defendant is now the owner of Tract A and the plaintiff is the owner of Tract B as referred to in the deed and easement.

On May 8, 1984, the defendant wrote to the plaintiff threatening to "disconnect our water supply going to your property" on June 1, 1984, because the plaintiff had refused to pay any of the costs of maintenance or repair of the water supply.

The plaintiff commenced this action on May 31, 1984, to enjoin the defendant from disconnecting the water supply system, to obtain a declaration of the rights and status of the plaintiff under the deed, and for such other and further relief as the court deemed just and equitable.

The defendant filed an answer and a cross-petition. In its answer, the defendant admitted the existence of the deed and the ongoing dispute regarding operational costs of the well and

water systems and denied other allegations of the petition. The defendant also alleged the plaintiff had not reimbursed it for any costs of operation, maintenance, or repair of the water supply system since July of 1978 and that the rights of the parties under the deed should be clarified and declared by the court to avoid continuing disputes between the parties. The answer prayed for a declaration of the rights of the parties under the deed and for such other and further relief as the court deemed equitable.

In its cross-petition, the defendant alleged that the plaintiff owed 30 percent of all operational, maintenance, and repair costs incurred from July 1978 to June 21, 1984, in the amount of $35,510.26.

In its answer to the cross-petition, the plaintiff denied that the defendant was entitled to relief; that it had not agreed to pay for operational costs of the water system; and that such costs were to be distinguished from costs of maintenance and repair. The plaintiff further alleged that the defendant's claim for damages prior to June 22, 1980, was barred by the statute of limitations.

The trial court found that under the deed the cost of maintenance included electrical costs of maintaining the wells; that the parties had failed to determine the ratio of use between themselves as required by the deed; that the parties should determine their respective ratio of use and the court would not determine that ratio for them; and that the plaintiff had failed to equitably determine its ratio of maintenance and repair costs for which it should reimburse the defendant, and therefore was not entitled to equitable relief. The trial court dismissed both the petition and cross-petition.

Both parties filed motions for new trial.

The defendant has appealed and has alleged three assignments of error, that the court erred (1) in refusing to resolve the dispute between the parties concerning the costs of operating, maintaining, and repairing the wells and waterlines, and in dismissing its cross-petition; (2) in not awarding it a money judgment for at least 30 percent of the costs of operating, maintaining, and repairing the wells over a period of 4 years prior to the filing of the cross-petition; and (3) in

refusing to permit Meredith C. Schaff, its expert witness, to testify.

The plaintiff has cross-appealed and has alleged four assignments of error, that the trial court erred (1) in dismissing its petition for injunctive relief before it had an opportunity to present rebuttal evidence and before it had presented its defense to the cross-petition; (2) in finding that "maintenance" included the cost of electricity to operate the pumps; (3) in admitting evidence of utility bills, repair bills, and invoices; and (4) in not finding the statute of limitations barred the defendant's claim under the cross-petition.

The first question on appeal is whether the trial court erred in dismissing the defendant's cross-petition and refusing to resolve the dispute regarding the plaintiff's liability for costs of operation, maintenance, and repair.

The trial court based its decision on the fact that the parties had failed to determine the ratio of water use between themselves. Clearly, there was a dispute as to the plaintiff's liability for the cost of water supplied to it by the defendant. The defendant's May 8, 1984, demand letter was incorporated into both parties' pleadings and was received in evidence. The letter provided as follows:

> Since 1980 we have attempted to determine with you an equitable solution to the water supply situation at your Minatare property. We have accepted your excuses for being unable to deal with the problem and we have patiently provided your operation with a water supply from our wells for almost 5 years. We have billed you for only 1/3 of the power cost of operating the wells which we have been willing to accept as compensation for our cost. We have not billed you for any of our repair, capital or replacement costs in maintaining the water supply, which we believe you clearly owe us. At no time have you offered any compensation to us for the water you use each day. Our billings to you have been ignored to the extent that 1/3 of electrical cost for the pumps supplying water to your property amounts to $32,206.34 through April 1, 1984.
>
> We have delayed pressing the matter on several

occasions because each time you needed more time to present a solution. We will not wait beyond June 1, 1984. Be advised that on June 1, 1984 we will begin to disconnect our water supply going to your property.

We also will pursue collection of the amount we believe you owe us on the water services we have supplied in the past.

The defendant's manager testified that when the dispute first arose in 1980, the defendant considered putting flow meters on the wells, but did not do so because both parties talked of settling the matter.

The record shows that it was the plaintiff which was unwilling to work with the defendant to determine the parties' ratio of water use. On the other hand, the defendant persisted in its efforts to resolve the matter for some 4 or 5 years before concluding that the plaintiff's water usage approximated 30 percent.

The Restatement (Second) of Contracts § 245 at 258 (1981) provides: "Where a party's breach by non-performance contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused." Comment *a*. to that section indicates at 258:

Where a duty of one party is subject to the occurrence of a condition, the additional duty of good faith and fair dealing imposed on him under § 205 may require some cooperation on his part, either by refraining from conduct that will prevent or hinder the occurrence of that condition or by taking affirmative steps to cause its occurrence. Under § 235(2), non-performance of that duty when performance is due is a breach. . . . Under this Section it has the further effect of excusing the non-occurrence of the condition itself, so that performance of the duty that was originally subject to its occurrence can become due in spite of its non-occurrence. . . .

In this case, the plaintiff did not try in good faith to determine its ratio of water use with the defendant. Despite the supposed efforts of the plaintiff to resolve the matter, the evidence does not show that it ever offered a solution or that it reimbursed the defendant for any of its expenses of operating,

maintaining, or repairing the wells. The evidence supports a finding that the provision requiring the parties to determine their respective ratio of water use between themselves should have been excused. The plaintiff did not use good faith in an effort to reach such a determination. The defendant could not be expected to reach a ratio determination with the plaintiff when the plaintiff refused to cooperate.

If there had been sufficient evidence, the trial court should have determined the ratio of water use between the parties and determined the amount due the defendant under the deed.

Next, the defendant contends that it should have been awarded a judgment for 30 percent of its costs of operating, maintaining, and repairing the wells which provided water to the plaintiff.

The plaintiff contends the defendant's proof of damages was too uncertain to permit any recovery of damages. There was no direct evidence of the amount of water used by either party. There was evidence that prior to mid-June 1984, the defendant supplied all of the water used by the plaintiff on Tract B. There was some evidence of the parties' respective uses of water on the two tracts and some evidence of the relative sizes of the cattle feeding and other agricultural operations on both tracts. The defendant presented evidence of repair bills and operational costs of the wells supplying water to the two tracts. However, there was no evidence from which a satisfactory calculation could be made as to the amount due the defendant from the plaintiff.

Damages that are uncertain, conjectural, or speculative cannot be the basis of a recovery. See, *Siefford v. Housing Authority*, 192 Neb. 643, 223 N.W.2d 816 (1974); *Sherman v. Travelers Ind. Co.*, 193 Neb. 104, 225 N.W.2d 547 (1975); *K & R, Inc. v. Crete Storage Corp.*, 194 Neb. 138, 231 N.W.2d 110 (1975).

A party seeking damages must offer proof which affords a basis for ascertaining their monetary value with reasonable certainty. *Siefford v. Housing Authority, supra.*

Since there was a failure of proof, the defendant was not entitled to recover any damages. It is unnecessary to consider the defendant's third assignment of error.

As to the cross-appeal, the plaintiff first contends that it was prejudiced because it was not permitted to offer rebuttal evidence or present a defense to the cross-petition. Specifically, the plaintiff claims it should have been allowed to offer proof that it had done equity and had "clean hands."

At the trial the plaintiff offered three exhibits and then rested. The defendant then presented its evidence. When the plaintiff was asked if it had any rebuttal, it responded that it had a motion. The plaintiff then moved for a directed verdict on the cross-petition. The defendant moved to withdraw its rest in order to offer an exhibit regarding repair costs, which had been discussed but not offered in evidence. The exhibit was then offered and received over the plaintiff's objection. The trial court then asked the defendant, "Do you renew your rest now and want to go ahead with the argument?" The defendant responded affirmatively. The record does not show any objection by the plaintiff. The record shows no ruling upon the motion for a directed verdict. Counsel then proceeded with argument. No further proceedings are shown.

"A party cannot complain of error when, by his own action, he has acquiesced therein." *Langenheim v. City of Seward*, 200 Neb. 740, 747, 265 N.W.2d 446, 451 (1978). The plaintiff may not complain now of the procedure below, since it made no objection.

The plaintiff next contends the trial court erred in holding electrical costs of maintaining the wells are included in maintenance costs under the deed and easement.

A written contract is not subject to interpretation or construction where the language of the contract is unambiguous. *Kansas-Nebraska Nat. Gas Co. v. Swanson Bros.*, 215 Neb. 398, 338 N.W.2d 774 (1983). In *Pawnee Plastics, Inc. v. American Savings Co.*, 210 Neb. 131, 133, 313 N.W.2d 262, 264 (1981), we held that a contract provision "is ambiguous when, considered with other pertinent provisions as a whole, it is capable of being understood in more senses than one."

In addition to paragraph 2, the deed reflects that Tract A has water wells; the owner of Tract B has utilized water from those wells for many years and will continue to have a need for it; and

the parties' predecessors in title wished to set in writing the terms of the water right being conveyed so that the owners of Tracts A and B could rely on the same.

Nowhere in the deed are operational costs expressly discussed. Nevertheless, the clear implication of the contractual provisions is that the parties to the contract contemplated that the water system would be operational.

*Insurance Co. v. Wayne*, 75 Ohio St. 451, 80 N.E. 13 (1907), involved litigation pertaining to a contract which provided for the allocation of maintenance and repair costs of certain improvements benefiting adjacent buildings. The plaintiff sought money under the contract for costs of maintaining and repairing an elevator. The court determined that operational costs of the elevator were included within maintenance costs, in part because the contract as a whole contemplated that the elevator would be operational.

In *Romney v. Improvement Co.*, 122 W. Va. 608, 609, 11 S.E.2d 758, 758-59 (1940), the court stated in regard to a franchise agreement for a sewage system: "The definers, generally, concur that costs properly allocated to maintenance of property, include all expenses reasonably necessary to its sustention. Operation and maintenance cover the same expenditures." See, also, *Boston, Petitioner*, 221 Mass. 468, 109 N.E. 389 (1915).

Since the deed in the case at bar clearly contemplated operation of the water system, we believe that paragraph 2 presented an ambiguity subject to construction. Like the courts in *Insurance Co., supra* and *Romney, supra*, we interpret the language to mean that operational costs of the water system are included in the term "maintenance." If the water system is not maintained in an operational state, the deed and easement have no purpose or effect.

It is unnecessary to consider the plaintiff's other assignments of error.

The judgment dismissing the petition and cross-petition is affirmed.

AFFIRMED.