JUDY NICHOLS, APPELLANT AND CROSS-APPELLEE, V. BRIAN BUSSE, APPELLEE AND CROSS-APPELLANT.

503 N.W.2d 173

Filed July 23, 1993.   No. S-91-108.

812

Neil W. Schilke, of Sidner, Svoboda, Schilke, Thomsen, Holtorf & Boggy, for appellant.

Eugene L. Hillman, of McCormack, Cooney, Mooney, Hillman & Elder, and David C. Mitchell, of Yost, Schafersman, Yost, Lamme, Hillis & Mitchell, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

WHITE, J.

Judy Nichols appeals a jury verdict of $6,200 in her suit against appellee, Brian Busse, for intentional infliction of emotion distress. Nichols appeals, inter alia, the district court's denial of her motions for mistrial and for new trial and the sufficiency of the damages award. Busse cross-appeals, asserting that his motions for directed verdict and for judgment notwithstanding the verdict should have been sustained. We affirm.

## I. FACTS

On the evening of October 20, 1989, Nichols' 18-year-old daughter, Shawna, was riding with Busse to a football game. En route, on a county road near Fremont, Busse's vehicle left the road and overturned. Evidence indicates that Shawna suffered severe injuries and died 3 to 5 minutes later.

Busse moved Shawna's body away from his pickup, placing it in a grass-filled ditch approximately 120 yards from the vehicle. The record indicates that Shawna's body was dragged for a portion of that distance. Busse then returned to Fremont, telling no one of the accident. At approximately 5:45 the next morning, Busse telephoned Nichols, claimed that Shawna had stolen his vehicle, and stated that "something horrible has happened." He also contacted the police and reported his vehicle stolen. Over the course of the morning and early afternoon, Busse repeatedly denied any knowledge of the whereabouts of Shawna or his vehicle.

Later that afternoon, following the discovery of the vehicle, Busse told police the truth. Nichols was informed of her daughter's death at approximately 3 o'clock that same afternoon.

Nichols subsequently sued Busse for intentional infliction of emotional distress. The following relevant events occurred during the litigation:

Prior to the trial of the emotional distress action, Shawna's estate, of which Nichols was the personal representative, received a $100,000 wrongful death settlement from Busse. Before the trial Nichols filed a motion in limine seeking to suppress all references to the settlement, as well as any

references to Busse's criminal prosecution. The motion was overruled, but the court indicated that the amount of the settlement was not relevant.

During voir dire, the court asked whether any juror had "a close personal or business relationship" with Busse. Although she did not respond, it later became apparent that juror Weisenberg may have been acquainted with Busse.

In his opening statement, Busse's counsel referred to both the criminal prosecution and the wrongful death suit. Nichols made no objection. Later, on cross-examination, Busse's counsel inquired into the criminal charges against Busse. Nichols' objections for relevance were sustained.

On cross-examination of another witness, the following occurred: Busse's counsel: "Did [Nichols] tell you that day that she had received—or the estate has received one hundred thousand dol-" Nichols' counsel: "I object." Busse's counsel: "-lars?"

Prior to that point, the record contained no evidence of the amount of the wrongful death settlement. After the jury was recessed, Nichols' counsel's motion to strike was granted. However, counsel chose not to move for mistrial until the following morning. In the interim, three witnesses were questioned and Nichols rested. The motion for mistrial, made after counsel consulted with Nichols, was overruled. The court also refused to grant Busse's motion for a directed verdict.

Following the jury's verdict of $6,200 in her favor, Nichols moved for a new trial, citing the comments made by Busse's counsel and alleging juror misconduct. With her motion, Nichols provided an affidavit indicating that juror Weisenberg had opposed awarding Nichols anything. In the affidavit, Weisenberg stated that during deliberations she had recounted the events of a similar accident involving her family. She had also told other jurors that as an insurance company employee, she had witnessed inflated claims. Another juror's affidavit stated that some jurors had discussed the $100,000 settlement figure—in contravention of the court's instructions.

Although it determined that Busse's counsel's reference to the settlement amount was improper, the district court denied Nichols' motion for new trial. The court also denied Busse's

motion for judgment notwithstanding the verdict. This appeal and cross-appeal followed.

Restated, Nichols alleges that (1) the district court erred by not granting her motions for mistrial and for new trial, (2) the court erred in instructing the jury, (3) jury misconduct denied her a fair trial, and (4) the amount of the verdict was insufficient as a matter of law. In his cross-appeal, Busse alleges that Nichols has failed to prove the elements of a cause of action for intentional infliction of emotional distress.

## II. CROSS-APPEAL

Busse's arguments on cross-appeal, which attack the sufficiency of Nichols' case, could, if favorably resolved, dispose of this appeal entirely. We therefore address those contentions first.

Specifically, Busse argues that Nichols' case (1) proved no severe emotional distress, (2) established only a wrongful death claim, (3) was based on emotional distress arising out of a desire to punish Busse, (4) was based on emotional distress caused by Busse's assertion of the Fifth Amendment, (5) alleged outrageous actions against a third party when Nichols was not present—and therefore stated no cause of action, and (6) failed to adequately prove the amount of damage caused by Busse. Busse thus concludes that the court erred by denying his motions for directed verdict and for judgment notwithstanding the verdict.

A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. The party against whom the verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the judgment is made, the case may not be decided as a matter of law. *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992); *Leonard v. Wilson*, 238 Neb. 1, 468 N.W.2d 604 (1991).

On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the material

and relevant evidence admitted which is favorable to the party against whom the motion is directed. Furthermore, the party against whom the motion is directed is entitled to the benefit of all proper inferences which can be deduced therefrom. *Pugh v. Great Plains Ins. Co.*, 239 Neb. 171, 474 N.W.2d 677 (1991). In addition, a jury verdict will not be set aside unless clearly wrong, and it is sufficient if any competent evidence is presented to the jury upon which it could find for the successful party. *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989); *Bell v. Williams Care Center*, 226 Neb. 1, 409 N.W.2d 294 (1987).

With these standards in mind, we turn to Nichols' cause of action. We have delineated three elements for a cause of action based on the tort of intentional infliction of emotional distress:

> (1) [t]hat there has been intentional or reckless conduct; (2) [t]hat the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community; and (3) [t]hat the conduct caused emotional distress so severe that no reasonable person should be expected to endure it.

*Gall v. Great Western Sugar Co.*, 219 Neb. 354, 360, 363 N.W.2d 373, 377 (1985). Accord *Pick v. Fordyce Co-op Credit Assn.*, 225 Neb. 714, 408 N.W.2d 248 (1987).

Based on the foregoing rules, we find that the record contains sufficient evidence to support the jury's verdict; the court did not err in denying Busse's motions for directed verdict and for judgment notwithstanding the verdict. The evidence indicates that Busse's actions satisfied the first element of a cause of action for intentional infliction of emotional distress. Busse clearly intended to call Nichols on the phone. Moreover, in dragging and abandoning Shawna's body, concealing his knowledge of the accident, and falsely accusing Shawna of stealing his pickup, Busse's actions were, at best, "reckless." Likewise, the jury could easily have found that, in combination, the foregoing actions were outrageous, atrocious, and beyond the bounds of decency.

We also find that the record contains sufficient evidence to support a finding that Nichols' emotional distress was "so

severe that no reasonable person should be expected to endure it." The endurability of the distress is a factual question for the jury; absent a complete lack of evidence on the issue we will not disturb the jury's finding. See, *Commerce Sav. Scottsbluff, supra*; *Bell, supra*. Nichols substantiated her claims with the testimony of a psychiatrist, who testified regarding Nichols' condition.

The psychiatrist, Dr. William Bruns, testified that Nichols suffered from posttraumatic stress syndrome, an extended form of psychological adjustment disorder coupled with anxiety depression. Dr. Bruns noted that over the 13 months since Shawna's death, Nichols' adjustment disorder/stress syndrome had manifested itself in hypersomnia, insomnia, recurring nightmares, anxiety attacks, depression, and headaches. The doctor had prescribed several medications for Nichols, had seen her every 2 weeks for counseling, and foresaw continued treatment as necessary.

Dr. Bruns also testified that the stress syndrome had been caused at least partially by Busse's actions. Busse presented no rebutting evidence.

Based on the evidence, we cannot say that Nichols failed, as a matter of law, to establish a cause of action for intentional infliction of emotional distress. Specifically addressing Busse's cross-appeal, we reject his arguments that Nichols has not proven severe emotional distress and that the evidence established only a claim for wrongful death. Although some testimony indicated that Nichols wanted to punish Busse and that she suffered anxiety because Busse had invoked his Fifth Amendment protection, Nichols' testimony indicated that those were peripheral concerns. Furthermore, Dr. Bruns testified that the *primary* cause of the severe distress was Busse's actions at the time of Shawna's death.

Busse next argues that by alleging outrageous actions by him against a third party when Nichols was not present, Nichols has stated no cause of action. Busse bases his argument on Restatement (Second) of Torts § 46 (1965), which provides, in pertinent part:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress

to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed *at a third person*, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress (a) to a member of such person's immediate family who is present at the time . . . .

(Emphasis supplied.)

Busse argues that because Nichols was not present when Shawna's body was mishandled, she cannot recover for her emotional distress. We disagree.

Nichols alleges several actions by which Busse caused her distress. First, he telephoned Nichols at 5:45 a.m., concealed the fact of Shawna's death, and falsely accused Shawna of stealing his vehicle. These actions clearly were directed toward Nichols, not a third person. The distress caused by these actions is not within the ambit of § 46(2). However, Nichols further alleges that Busse's actions at the time of the accident also caused her distress.

The record indicates that at least a portion of the mishandling of Shawna's body—removing it from the vehicle, dragging it across a field, and abandoning it in the ditch—occurred while Shawna was alive. When speaking with police, Busse stated that he carried and dragged Shawna's body away from the vehicle and that "she was having a hard time breathing." In addition, the physician who performed the autopsy on Shawna stated that she lived a short time after sustaining her injuries.

Although we have cited the first subsection of § 46 approvingly, *Paasch v. Brown*, 193 Neb. 368, 227 N.W.2d 402 (1975), we have not adopted the second subsection. Moreover, in a case dealing with negligent infliction of emotional distress, we rejected the assertion that to recover, the emotional distress plaintiff must contemporaneously observe the injury to the third-party victim. See *James v. Lieb*, 221 Neb. 47, 375 N.W.2d 109 (1985). See, also, *Haselhorst v. State*, 240 Neb. 891, 485 N.W.2d 180 (1992). As we have rejected the requirement of contemporaneous observance in "bystander recovery" cases involving negligence, logic dictates that the same rule apply to

situations involving reckless or intentional acts.

In *James, supra*, we based the plaintiff's ability to recover on the foreseeability of the harm suffered, rather than on the plaintiff's presence in the "zone of danger." We set out three requirements that must be shown in order for the plaintiff to recover: (1) that a marital or intimate familial relationship existed between the plaintiff and the victim; (2) that the plaintiff's shock is, in part, a result of the manner in which the plaintiff became aware of the injury to the victim; and (3) that the foreseeable harm to the plaintiff arose from the death or serious injury of the victim. The first and third requirements are objective, while the second is subjective, dependent on the facts of the particular case. See *id*.

Applying these factors to the case at bar, we find that the emotional harm to Nichols caused by Busse's actions was reasonably foreseeable. The first and most important factor, an intimate familial relationship between the victim and the plaintiff, is clearly present. See *James, supra*. The intimacy of a parent-child relationship cannot be questioned. See *id*. In addition, the record indicates that the relationship between Nichols and Shawna was especially close. The third requirement is also met. Busse's actions—removing the body from the vehicle, dragging it across a field, and abandoning it—nullified any chance of Shawna's survival, and thus satisfied the third portion of the *James* test.

Lastly, with regard to her knowledge of the injury, Nichols learned of Shawna's death approximately 1 hour after the discovery of the body. At that time, the police told Nichols "exactly what [they] had found," which would include the location of the body and the evidence that it had been dragged and abandoned. Moreover, the shock Nichols suffered when she learned the details surrounding her daughter's death served as a final blow, exacerbating and finalizing the anxiety which began with Busse's statements to Nichols 9 hours earlier.

For our purposes, the record contains sufficient facts to permit Nichols to recover under the rationale presented by *James*. The record adequately supports the jury's verdict; we reject Busse's argument based on § 46(2).

Busse's final argument relates to Nichols' proof of damages.

Because one of Nichols' assignments of error focuses on a related issue, we address both arguments together. At trial the jury received instruction No. 15, which stated:

There is evidence that the plaintiff suffered mental anguish and distress as a result of her daughter's death. If you find for the plaintiff, the plaintiff is entitled only to be compensated for that separate mental distress that you find to be proximately caused by the intentional or reckless infliction of emotional distress caused by the outrageous conduct of the defendant.

The right of a person suffering from damages or injury, who is further damaged or injured by reason of conduct of another, to recover for the damages proximately resulting from such conduct, includes the right to recover for an aggravation of that existing injury or damage.

During trial, Dr. Bruns stated that there was no way to precisely quantify the percentage of distress caused by Busse's actions. Based on this testimony, the parties make diametric arguments. Nichols argues that the court should have instructed the jury that if they were unable to apportion the amount of distress caused by Busse's conduct, Busse should be liable for all the emotional distress suffered by Nichols. Conversely, Busse argues that irrespective of the instruction, Nichols failed to adequately prove the amount of the damage she suffered because of Busse's actions. We first address the propriety of the instruction.

Nichols argues that instruction No. 15 runs contrary to our holding in *McCall v. Weeks*, 183 Neb. 743, 164 N.W.2d 206 (1969), in which we upheld an instruction giving the defendant the burden of apportioning between the pain and suffering caused by the plaintiff's preexisting emphysema, and the pain and suffering caused by the defendant's negligence. The instruction provided that if the jury could not apportion the damages, then the plaintiff could recover for all pain and suffering proven. See, also, NJI2d Civ. 4.09 (providing that in certain cases, the following language should be added to an instruction resembling the first paragraph of instruction No. 15 above: "If you cannot separate damages caused by the preexisting (condition) from those caused by the (occurrence,

accident, collision, et cetera), then the defendant is liable for all of those damages").

Although we note that the present case certainly does not present a classic "preexisting injury," we need not address the applicability of the *McCall* apportionment instruction to emotional distress cases, for Nichols has failed to establish that the court erred in refusing her proposed instruction.

> "To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law; (2) the tendered instruction is warranted by the evidence; and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction."

*Jensen v. Archbishop Bergan Mercy Hosp.*, 236 Neb. 1, 6, 459 N.W.2d 178, 182 (1990) (quoting *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990)).

In determining not to include an apportionment clause in instruction No. 15, the court stated: "I find there is applicable evidence here, gentlemen, that the jury could determine the extent of any aggravation." Both parties objected to the instruction. Nichols argued that if the burden of apportionment was not placed on Busse, and if the jury could not apportion the damages, then she could not recover. However, as is evidenced by the verdict, and bearing out the court's inclination, the jury was able to apportion damages. Thus, Nichols suffered no prejudice by the court's refusal to give her proposed instruction.

Having disposed of Nichols' argument relating to the propriety of the damages instruction, we turn to Busse's final contention on cross-appeal. Busse argues that because Nichols did not prove the amount of damages caused by Busse with exactitude, she has failed to meet her burden of proof. His argument is without merit.

As noted previously, a jury verdict will not be set aside unless clearly wrong; the verdict is sufficient if there is any competent evidence presented to the jury upon which it could find for the successful party. *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989); *Bell v. Williams*

*Care Center*, 226 Neb. 1, 409 N.W.2d 294 (1987).

The record contains sufficient evidence to support the jury's finding that Busse's actions caused a quantifiable portion of Nichols' emotional distress. Although Dr. Bruns stated that it would be "speculation" to place a percentage on the amount of distress caused by Busse's actions, he used the word in the lay sense, intimating a lack of specificity. Nichols introduced a variety of evidence which, though not providing mathematical certainty, indicated that Busse's actions exacerbated Nichols' distress and were the primary cause of the posttraumatic stress syndrome. The trial court acknowledged the sufficiency of Nichols' showing, commenting that there was sufficient evidence for the jury to determine the extent to which Nichols' grief was aggravated. We find no error in the court's determination.

With regard to the amount of damages sustained, Nichols was simply required to offer sufficient proof of damages so that the jury could reach its award without awarding an uncertain, speculative recovery. Cf., *Woitalewicz v. Wyatt*, 229 Neb. 626, 428 N.W.2d 216 (1988); *Shadow Isle, Inc. v. Granada Feeding Co.*, 226 Neb. 325, 411 N.W.2d 331 (1987); *Siefford v. Housing Authority*, 192 Neb. 643, 223 N.W.2d 816 (1974). The amount of damages for pain, suffering, and emotional distress inherently eludes exact valuation. As we noted in *Schaefer v. McCreary*, 216 Neb. 739, 742, 345 N.W.2d 821, 824 (1984):

> There is no formula for computing damages in a [personal injury] case such as this, and the final verdict is usually made up from a number of factors. As a general rule, the law gives the jury the right to determine the amount of recovery in cases such as this, and if the verdict is not so disproportionate to the injury as to disclose prejudice and passion, it will not be disturbed.

Accord *Woitalewicz, supra.*

Nichols provided adequate proof of damages to sustain her burden. She provided lists of the prescriptions she had taken, along with receipts for other medical expenses. She also presented evidence regarding the costs of her sessions with Dr. Bruns, which, when combined with her other medical costs, constituted over one-third of the eventual verdict amount.

Nichols also presented evidence regarding her future medical expenses. We cannot say that Nichols presented so little proof of damages that the jury's verdict should be disturbed.

We thus dispose of Busse's arguments on cross-appeal, rejecting his arguments that Nichols failed to establish a cause of action for intentional infliction of emotional distress. There was no error in the district court's refusal to grant Busse's motions for directed verdict and for judgment notwithstanding the verdict.

## III. NICHOLS' APPEAL

### 1. MISTRIAL

We turn to Nichols' appeal. Nichols first argues that the district court erred by not granting her motion for mistrial because there was prejudicial misconduct by Busse's counsel in (1) referring to the wrongful death settlement amount when questioning a witness; (2) failing to disclose Weisenberg's acquaintance with Busse; (3) making unsupported, prejudicial remarks during opening statements; and (4) asking questions about the criminal charges against Busse.

A motion for mistrial is directed to the discretion of the trial court. Its ruling will not be disturbed on appeal absent a showing of abuse of that discretion. *State v. Groves*, 239 Neb. 660, 477 N.W.2d 789 (1991); *Reicheneker v. Seward*, 203 Neb. 68, 277 N.W.2d 539 (1979).

Nichols first argues that her motion for mistrial should have been granted because Busse's counsel, while questioning a witness, mentioned that the wrongful death settlement had been for $100,000. That fact had not been adduced as evidence during trial. The trial court, despite finding that counsel's conduct was intentional and improper, denied the request for mistrial.

While we agree with the court that counsel's conduct was improper and should be condemned, we do not find the overruling of the motion for mistrial to be an abuse of discretion. A motion for mistrial should be made at the first reasonable opportunity. If not timely made, it is waived. See, *Motis v. Manning*, 200 Neb. 593, 264 N.W.2d 844 (1978); *Breiner v. Olson*, 195 Neb. 120, 237 N.W.2d 118 (1975). Nichols

did not move for mistrial in a timely fashion.

After Busse's counsel interjected the settlement amount during questioning, Nichols' counsel objected, had the jury excused, and had the question stricken. However, Nichols' counsel did not move for a mistrial at that time. Following counsels' discussions with the court, one witness was cross-examined, redirected, and recrossed, Nichols was cross-examined and questioned on redirect, Busse was questioned on direct examination, and Nichols rested her case. The following morning Nichols moved for mistrial. The motion was denied.

Nichols argues that prior to the conclusion of the proceedings that evening she had no opportunity to consult with counsel, and thus, her first reasonable opportunity to request the mistrial was the next morning. We disagree. Although Nichols' counsel states that his request to consult with his client was not granted, we find no evidence of such a request, or its denial, in the discussion following the improper question. Additionally, counsel's comments to the district court indicated that he had decided to forgo any motion for mistrial, not that his decision was subject to speaking with his client. Finally, any attempt to hold the decision in abeyance was foreclosed when Nichols rested her case.

Nor are we convinced that the occurrence was so egregiously prejudicial that it demands this court grant a new trial sua sponte. See *Chicago, B. & Q. R. Co. v. Kellogg*, 55 Neb. 748, 76 N.W. 462 (1898). We have previously noted that one cannot ordinarily predicate error on the trial court's failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the court admonishes the jury not to consider such material. *State v. Morrison, ante* p. 469, 500 N.W.2d 547 (1993); *Groves, supra*. In the case at bar, the court struck the question from the record, as requested by Nichols. The court also admonished the jury, as requested by Nichols, that the recovery was by the personal representative of Shawna's estate, not by Nichols. The court adequately complied with the requests of counsel and cautioned the jury not to consider the improper statement. Based on the precautionary measures taken by the court and the lack of

timeliness of Nichols' request, we cannot say that the court abused its discretion in denying the motion for mistrial. Nichols' arguments to the contrary are without merit.

Nichols next argues that a variety of other actions by Busse's counsel prevented her from receiving a fair trial. She first alleges that Busse's counsel failed to disclose Busse's relationship with juror Weisenberg. The record does not establish that Weisenberg was, in fact, acquainted with Busse, much less that Busse's counsel knew of any such acquaintance. This argument is meritless.

Nichols also contends that Busse's counsel made unsupported, prejudicial remarks during opening statements. However, Nichols made no objection to any of the remarks until after the verdict had been rendered. Failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Cave*, 240 Neb. 783, 484 N.W.2d 458 (1992). See, *In re Interest of S.B.E. et al.*, 240 Neb. 748, 484 N.W.2d 97 (1992); *Breiner, supra*. Nichols waived her objections to the alleged misconduct; she may not assert them now.

Nichols' final allegation of misconduct relates to questions regarding the criminal proceedings against Busse which arose out of his actions at the time of the accident. Three such questions were asked by Busse's counsel. Nichols objected to each, and the court sustained each objection.

Nichols argues that the questions were improper and prejudicial and denied her a fair trial because they implied that Busse had been adequately "punished" for his actions. We cannot agree. The court sustained each of Nichols' objections before any answers were elicited. Nichols did not request that opposing counsel be admonished regarding the questions; neither did she request a mistrial. Furthermore, the court instructed the jury that any criminal action against Busse was irrelevant and should not be considered in its deliberations. Nichols has not shown that the questions prejudiced her or denied her a fair trial.

### 2. JUROR MISCONDUCT

Nichols' next set of arguments combine to allege that the trial court erred in denying her motion for new trial based on juror

misconduct. Nichols contends that four instances of juror misconduct demand a new trial: (1) juror Weisenberg's failure to reveal her acquaintanceship with Busse; (2) Weisenberg's statements to other jurors that as an insurance worker, she had witnessed inflated insurance claims; (3) Weisenberg's recounting of a similar accident to the other jurors; and (4) the discussion of the $100,000 settlement figure by some jurors.

"The district court's denial of a motion for new trial will be affirmed when the court's decision is neither prejudicial nor an abuse of discretion." *First Nat. Bank v. Daggett*, 242 Neb. 734, 743, 497 N.W.2d 358, 365 (1993). See, also, *Schuster v. Baumfalk*, 229 Neb. 785, 429 N.W.2d 339 (1988). Furthermore, the trial court's ruling on a question involving jury misconduct will not be disturbed on appeal absent an abuse of discretion. *Kohrt v. Hammond*, 160 Neb. 347, 70 N.W.2d 102 (1955).

In a motion for new trial, allegations of misconduct by jurors must be substantiated by competent evidence. The misconduct complained of must relate to a disputed matter that is relevant to the issues in the case and must have influenced the jurors in arriving at the verdict. *Auer v. Burlington Northern RR. Co.*, 229 Neb. 504, 428 N.W.2d 152 (1988). Additionally, the movant must show that the alleged misconduct resulted in a prejudicial verdict. *Id.*

Nichols first alleges that juror Weisenberg improperly failed to disclose her acquaintanceship with Busse. This argument is not supported by the evidence and is without merit. During voir dire, the judge asked the prospective jurors, "Do any of you have a *close personal or business relationship* with Mr. Busse?" (Emphasis supplied.) Weisenberg did not respond to the question. During the remainder of voir dire, neither party asked a more indepth question concerning relationships between the parties and the jurors.

Nichols argues that because Weisenberg's husband played on the same softball team as Busse, and because Weisenberg may have attended several of the team's games and a team party, she should have disclosed an acquaintanceship with Busse. We do not agree. The record does not indicate that Weisenberg failed to respond truthfully to any questions put to her by the judge or the attorneys. The court specifically found that any

relationship between Busse and Weisenberg was not sufficiently close to prejudice Nichols' right to a fair trial. The court's determination was not an abuse of discretion.

The remainder of Nichols' allegations of juror misconduct are based on affidavits from several of the jurors. With her motion for new trial, Nichols presented an affidavit which stated that during deliberations, juror Weisenberg had recounted an experience in which an insured had presented an inflated claim to the insurance company for which Weisenberg worked. In another affidavit, Weisenberg stated that she had told other jurors about an auto accident in which her cousin had been killed. The affidavit also stated (although it is unclear whether this information was conveyed to other jurors) that Weisenberg's relatives had not sued and had fully recovered from their loss. Busse also presented several juror affidavits, attempting to rebut the allegations of juror misconduct. We must first determine whether these affidavits were properly admitted as evidence.

The use of juror affidavits to inquire into the validity of a verdict is controlled by Neb. Rev. Stat. § 27-606(2) (Reissue 1989), which provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention* or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes.

(Emphasis supplied.)

In our various applications of § 27-606(2), we have discussed the import of the statute. We have noted:

> [Section 27-606(2)] permits use of a juror's affidavit to

> establish that the jury considered prejudicial information emanating from a source other than evidence presented at trial. However, it is just as clear that [§ 27-606(2)] prohibits a juror's affidavit to impeach a verdict on the basis of jury motives, methods, misunderstanding, thought processes, *or discussions during deliberations*, which enter into the verdict.

(Emphasis supplied.) *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 456-57, 412 N.W.2d 56, 78 (1987). Furthermore, we have held that if a jury considers extraneous information, that information may be deemed prejudicial without proof of actual prejudice, provided that the information relates to an issue submitted to the jury and there is a reasonable possibility that the information affected the verdict to a litigant's detriment. *Loving v. Baker's Supermarkets*, 238 Neb. 727, 472 N.W.2d 695 (1991).

Our inquiry then, is whether a juror's statements during deliberations, based on personal knowledge gained through life experiences, constitute "extraneous" information pursuant to § 27-606(2). This is a question of first impression in Nebraska. But cf. *Cook v. Patterson*, 129 Neb. 16, 260 N.W. 696 (1935) (addressing a similar issue prior to adoption of § 27-606). However, because § 27-606(2) is modeled after Fed. R. Evid. 606(b), which has been adopted by several states, this question has received attention in other jurisdictions. Nonetheless, our research has revealed that despite basing their rulings on virtually identical statutory language, our judicial brethren have taken a variety of analytical paths on their way to like results. See, e.g., *Hard v. Burlington Northern R. Co.*, 870 F.2d 1454 (9th Cir. 1989); *Marr v. Shores*, 495 A.2d 1202 (Me. 1985); *Baker v. Wal-Mart Stores, Inc.*, 727 S.W.2d 53 (Tex. App. 1987). But cf. *United States v. Eagle*, 539 F.2d 1166 (8th Cir. 1976), *cert. denied* 429 U.S. 1110, 97 S. Ct. 1146, 51 L. Ed. 2d 563 (1977) (intimating that a different result may obtain in a criminal prosecution).

Based on our review of the pertinent case law, we feel that the proper approach is to prohibit the use of juror affidavits which seek to impeach verdicts due to a juror's intradeliberational statements based on his or her personal knowledge, when that

knowledge is not directly related to the litigation at issue. We are aware that in *Cook, supra,* when faced with a similar situation, this court held that the affidavits were admissible. In *Cook,* a jury member had previously suffered a head injury similar to the injury which gave rise to the plaintiff's negligence action. During deliberations, the juror related the events of his injury, based his approval of the verdict on his past experiences, and influenced the other jurors in arriving at their verdict.

On appeal, we set aside the verdict and remanded the cause for a new trial. In so doing, we stated: " 'Jurors may not state to fellow jurors, while considering their verdict, facts relative to issues in the case within their own personal knowledge, but not of the evidence introduced. They should make the same known during the trial, and, if desired, testify as witnesses.' " 129 Neb. at 18, 260 N.W. at 698 (quoting *Ewing v. Hoffine,* 55 Neb. 131, 75 N.W. 537 (1898)).

Our opinion in *Cook,* despite addressing a situation much like that presented by the case at bar, is distinguishable. *Cook* was decided before the advent of § 27-606(2), and, while we have always looked with disfavor on the use of jury affidavits to impeach jury verdicts, the use of such affidavits has been restricted to a greater degree since the enactment of § 27-606(2). Compare *Cook, supra,* and *Selders v. Armentrout,* 192 Neb. 291, 220 N.W.2d 222 (1974), with *Rahmig, supra.*

We agree with decisions from other jurisdictions which have held that a juror's intradeliberational statements, when based on personal knowledge not directly related to the litigation at issue, do not constitute "extraneous" information within the meaning of the language of § 27-606(2). See, *Brooks v. Zahn,* 170 Ariz. 545, 826 P.2d 1171 (Ariz. App. 1991); *State v. Anderson,* 748 S.W.2d 201 (Tenn. Crim. App. 1985), *overruled on other grounds, State v. Shelton,* 851 S.W.2d 134 (Tenn. 1993); *Fillinger v. Fuller,* 746 S.W.2d 506 (Tex. App. 1988). Cf. *State v. Steinmark,* 201 Neb. 200, 266 N.W.2d 751 (1978) (allowing affidavits indicating that a juror had made statements regarding the *defendant's* past criminal record). These decisions provide a variety of persuasive rationales to support the aforementioned rule. Some hold that such information, although not adduced at the trial, is better deemed "internal"

information—because the information does not come to the jury's attention via a source outside their membership, such as a book, a dictionary, or the media. See, *Marr, supra*; *Baker, supra*. One commentator has noted that such information, because it occurs during jury discussions, is properly classified as part of the method, thought process, or motive behind the verdict, factors we have held to be unimpeachable by jury affidavits. See 8 John H. Wigmore, Evidence in Trials at Common Law § 2354(1)(b) (McNaughton rev. 1961). See, also, *Marr, supra*; *Rahmig, supra*. Other courts have noted that the jury is expected to call on their personal experiences and common sense, and unless their knowledge is directly related to the litigation at issue, those experiences cannot be attacked as "extraneous" prejudicial information. See *Hard, supra*. See, also, *Brooks, supra*; *State v. Anderson, supra*. Cf. *Steinmark, supra*. Finally, the rationale illustrated by *Brooks, supra*, seems quite apropos in the case before us.

In *Brooks*, following an adverse verdict, the plaintiffs moved for a new trial, based on juror misconduct. The plaintiffs argued that the statements of one juror, a former nurse, relating to the medical testimony at trial constituted "extraneous prejudicial information." 170 Ariz. at 548, 826 P.2d at 1174. In concluding that the juror's statements were not extraneous information, the Court of Appeals of Arizona stated:

> [Plaintiffs'] argument . . . confuses the functions of voir dire and Rule 606(b) [a rule identical to § 27-606(2)]. [Plaintiffs] now contend that, because [the juror] is a retired nurse, she could not draw upon her medical knowledge during deliberations. During voir dire, [plaintiffs] could have questioned [the juror] about her nursing and personal experience and the impact of that experience upon her view of the issues involved in the litigation . . . . *The proper time for a party to raise the issue of the potential impact of a juror's specialized knowledge is during voir dire, not after the party accepts the juror with full knowledge that she does or may possess specialized knowledge.*

(Emphasis supplied.) 170 Ariz. at 552, 826 P.2d at 1178. Accord, *United States v. Duzac*, 622 F.2d 911 (5th Cir. 1980),

*cert. denied* 449 U.S. 1012, 101 S. Ct. 570, 66 L. Ed. 2d 471.

We find the foregoing statement especially persuasive as applied to the case at bar. During voir dire, juror Weisenberg stated that her cousin had died in a car accident. Nichols' counsel then asked her, "Was [sic] there any complicated facts or anything unusual about the recovery of the family by reason of his death?" Weisenberg responded, "No." Nichols' counsel asked her no more questions about the incident. Later in voir dire, Weisenberg stated that she worked for an insurance company and that she handled some claims. After she informed Nichols' counsel that her employment position would not tend to prejudice her judgment, Weisenberg was asked no more questions regarding her employment. Nichols' counsel could have challenged Weisenberg for cause, but chose not to. Nichols should not be heard to complain about Weisenberg's use of her personal, specialized knowledge during deliberations. See *Auer v. Burlington Northern RR. Co.*, 229 Neb. 504, 516, 428 N.W.2d 152, 160 (1988) (stating, "The failure to make appropriate inquiry as to the qualifications of prospective jurors on voir dire waives later objections based on facts that might have been disclosed by such inquiry").

Based on the rationales enunciated in the above-listed cases and the application of the facts of this case, we hold that juror Weisenberg's statements regarding her experiences with inflated insurance claims and her cousin's accident were not "extraneous" information within the meaning of § 27-606(2). Thus, the affidavits used to support these allegations were not admissible to impeach the jury's verdict. Without such evidentiary support, Nichols did not meet her burden of establishing juror misconduct. See *Auer, supra.* The trial court did not abuse its discretion in denying Nichols' motion for new trial based on these two allegations of juror misconduct.

We thus turn to Nichols' final allegation of juror misconduct, that several jurors considered the $100,000 wrongful death settlement, in contravention of the court's admonitions and instructions. Nichols again supports her allegation with a juror affidavit. Busse also presented several juror affidavits which stated that the settlement amount had not been discussed. We must again analyze the admissibility of

the affidavits.

As noted before, § 27-606(2) prohibits the use of juror affidavits to impeach a verdict, "except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention." Applying this provision, we have previously noted that "extraneous" means " 'existing or originating outside or beyond : external in origin : coming from the outside . . . brought in, introduced, or added from an external source or point of origin.' " *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 455, 412 N.W.2d 56, 77 (1987) (quoting Webster's Third New International Dictionary, Unabridged 807 (1981)).

In spite of our prior applications of the term "extraneous" as employed in § 27-606(2), neither the statutory language nor our past decisions make clear whether that term encompasses information that has been excluded from jury consideration by a motion to strike. We thus must construe the language of the section.

Statutory language is to be given its plain and ordinary meaning. *State ex rel. Grams v. Beach, ante* p. 126, 498 N.W.2d 83 (1993); *Sorensen v. Meyer*, 220 Neb. 457, 370 N.W.2d 173 (1985). In addition, we will, if possible, try to avoid a construction which would lead to absurd, unconscionable, or unjust results. *Sorensen, supra; Worley v. City of Omaha*, 217 Neb. 77, 348 N.W.2d 123 (1984). Finally, to construe the statute properly, we will look to the purpose behind the statute and will give the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *In re Application A-16642*, 236 Neb. 671, 463 N.W.2d 591 (1990). See, also, *Nuzum v. Board of Ed. of Sch. Dist. of Arnold*, 227 Neb. 387, 417 N.W.2d 779 (1988).

As our decisions indicate, we have been reluctant to allow jurors to impeach their verdicts unless the situation clearly falls within the terms of the evidentiary statute. See, e.g., *Loving v. Baker's Supermarkets*, 238 Neb. 727, 472 N.W.2d 695 (1991); *Rahmig, supra; Lambertus v. Buckley*, 206 Neb. 440, 293 N.W.2d 110 (1980). In the situation presented by the case at bar, we hold that the settlement amount cannot properly be characterized as "extraneous" information within the terms of

§ 27-606(2).

The settlement figure, although not part of the evidence, came to the attention of the jury in the presence of the judge and both attorneys. Section 27-606(2) was obviously not designed to deal with this situation. Section 27-606(2) enables the parties to introduce evidence that improper information came to the attention of the jury. However, the section does not permit further use of the juror testimony, e.g., the jurors may not relate the effect of such information on their verdict. See *Loving, supra.*

In the case at bar, juror affidavits were unnecessary to disclose the extraneous nature of the settlement information and the improper manner in which it was brought to the jury's attention. Both counsel and the court were immediately aware of the impropriety. Nichols' counsel properly objected and moved to strike; the court properly sustained both requests. As previously discussed, a motion for mistrial was not timely made. However, the problem had been recognized and dealt with.

If the jurors were allowed to testify that the settlement amount was discussed during deliberations, it would run afoul of the policy of limiting the potential for juror harassment. In every case where the losing party had been granted a motion to strike, that party would be inclined to seek out the jurors and question them regarding their deliberations. This is exactly the type of action § 27-606(2) seeks to limit. See *Rahmig, supra* (quoting *McDonald v. Pless*, 238 U.S. 264, 35 S. Ct. 783, 59 L. Ed. 1300 (1915), and noting that the rationale behind the strictures on the use of juror affidavits is to prevent juror harassment and to free the jury to engage in frank discussions). The present case indicates the very real potential for juror harassment; between them, Nichols and Busse presented a total of seven affidavits from four members of the jury.

Because the settlement amount came to the attention of the jury during trial, any discussion of the settlement during deliberations was just that—part of the jury's discussions. Thus, the affidavits related to conduct not within the ambit of § 27-606(2). See *Rahmig, supra.* Nor were the affidavits admissible to show that the jury failed to follow the court's

instructions. See, *Rahmig, supra*; *Lambertus, supra*; *Iman v. Inkster*, 90 Neb. 704, 134 N.W. 265 (1912) (holding that juror affidavits which alleged a failure to follow the court's instructions could not be used to impeach the jury's verdict).

We are aware of our previous statement that § 27-606(2) "permits use of a juror's affidavit to establish that the jury considered prejudicial information emanating from a source other than evidence presented at trial." *Rahmig*, 226 Neb. at 456, 412 N.W.2d at 78. Accord *Loving, supra*. However, both *Loving* and *Rahmig* dealt with information much different from that involved in the case presently before us. In *Loving*, the bailiff erroneously gave the jury copies of several documents which had not been entered into evidence. We deemed the information "extraneous." In *Rahmig*, we upheld the exclusion of affidavits alleging that the jury had discussed the tax consequences of their award. Neither case involved information which arose in the presence of the parties and the court. We thus clarify the above-quoted language as not encompassing the situation presented by the case at bar.

The affidavit alleging that the jury considered the settlement amount was not admissible to impeach the verdict. Nichols' allegation of jury misconduct was not supported by competent evidence, and therefore, the court did not abuse its discretion or prejudice her by denying her motion for a new trial. See *Auer v. Burlington Northern RR. Co.*, 229 Neb. 504, 428 N.W.2d 152 (1988). We thus dispose of Nichols' arguments based on jury misconduct.

### 3. JURY INSTRUCTIONS

Nichols also attacks the instructions given the jury. We have already addressed one such argument, relating to the burden of proof on damages. We now address her second instruction-related argument, that the court erred by refusing to give an instruction to indicate (1) that Nichols had received no money from Busse, (2) that this action was Nichols' only opportunity to recover, and (3) that the jury should ignore any statements implying that Busse might be required to pay twice for the damages requested.

It is not error for a trial court to refuse a requested

instruction if the substance of the proposed instruction is contained in those instructions actually given. *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991); *Denesia v. St. Elizabeth Comm. Health Ctr.*, 235 Neb. 151, 454 N.W.2d 294 (1990). Furthermore, as we have previously discussed, Nichols bears a threefold burden of establishing the impropriety of refusing her requested instruction. She must show (1) that she was prejudiced by the court's refusal, (2) that her proposed instruction correctly stated the law, and (3) that her tendered instruction is applicable to the evidence in the case. *Brown, supra*; *Chadron Energy Corp. v. First Nat. Bank*, 236 Neb. 173, 459 N.W.2d 718 (1990).

Nichols has failed to show that she was prejudiced by the court's refusal to give the requested instruction. Following the mention of the settlement amount by Busse's counsel, the court admonished the jury: "The fact that there was another civil action brought, *not by the plaintiff [Nichols], but by the personal representative of the estate of Shawna Nichols* and that there was a recovery therefore is not something that should enter into your deliberations in this trial." (Emphasis supplied.) This point was reiterated in the court's instructions to the jury: "The fact that . . . another civil case arose out of the . . . collision that resulted in the death of Shawna Nichols is not a fact that should enter into your deliberations in this trial. . . . [A]ny recovery from another civil case is not connected with this case . . . ."

The court's instructions adequately covered the substance of Nichols' requested instruction. Moreover, the court's admonition further clarified the instruction actually given. Nichols was not prejudiced by the court's refusal to give her requested instruction.

### 4. SUFFICIENCY OF THE VERDICT

Nichols' final argument is that the jury's verdict was insufficient as a matter of law. Again, we disagree.

On appeal, the fact finder's determination of damages is given great deference. *Schuessler v. Benchmark Mktg. & Consulting, ante* p. 425, 500 N.W.2d 529 (1993). This court will not disturb a jury verdict as inadequate unless it is so clearly

against the weight and reasonableness of the evidence and so disproportionate to the injury proven that it appears to be the result of passion, prejudice, mistake, or disregard by the jury of the evidence or rules of law. *Bay v. House*, 226 Neb. 521, 412 N.W.2d 466 (1987) (citing *Bashus v. Turner*, 218 Neb. 17, 352 N.W.2d 161 (1984)).

Based on the record, the jury's verdict of $6,200 does not appear to be so out of touch with the evidence and injury that it should be disturbed. As noted before, proving mental suffering is far from an exacting endeavor. Nichols introduced evidence that she had incurred medical expenses of over $2,000 at the time of trial. She introduced further evidence that she would incur future medical expenses of $2,600. The jury was left to place a monetary value on Nichols' emotional distress. We cannot say that the figure chosen by the jury is inadequate as a matter of law. We thus dispose of Nichols' final argument.

## IV. CONCLUSION

We reject Busse's arguments that Nichols failed to adequately establish a cause of action for intentional infliction of emotional distress. The district court did not err by denying his motions for directed verdict and for judgment notwithstanding the verdict. We also hold that Nichols was not prejudiced by the district court's jury instructions. Furthermore, we affirm the court's denial of Nichols' motion for mistrial, the court's denial of Nichols' motion for new trial, and the jury's verdict.

AFFIRMED.

CAPORALE, J., dissenting.

Because the record establishes as a matter of law that the requisite elements of intentional or reckless conduct are lacking, I respectfully dissent.

It is well established in this state that before a plaintiff may recover for intentional infliction of emotional distress, he or she must establish, among other elements, that there was intentional or reckless conduct on the part of the defendant. See, *Dale v. Thomas Funeral Home*, 237 Neb. 528, 466 N.W.2d 805 (1991); *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991); *Pick v. Fordyce Co-op Credit Assn.*, 225 Neb. 714, 408 N.W.2d 248 (1987); *Gall v. Great Western Sugar Co.*, 219

Neb. 354, 363 N.W.2d 373 (1985); *Hassing v. Wortman*, 214 Neb. 154, 333 N.W.2d 765 (1983); *Davis v. Texaco, Inc.*, 210 Neb. 67, 313 N.W.2d 221 (1981); *Paasch v. Brown*, 193 Neb. 368, 227 N.W.2d 402 (1975).

In reaching its decision, the majority relies upon Restatement (Second) of Torts § 46 (1965), but ignores the comment which clarifies that § 46

> applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly, as that term is defined in § 500, in deliberate disregard of a high degree of probability that the emotional distress will follow.

*Id.*, § 46, comment *i*. at 77.

> "Recklessness," as the Restatement defines the term,
> may consist of either of two different types of conduct. In one the actor knows, or has reason to know . . . of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk. In the other the actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so.

*Id.*, § 500, comment *a*. at 587-88.

The majority paints the defendant Brian Busse's conduct as intentional by pointing to the fact that he intentionally called the plaintiff, Judy Nichols, on the telephone. But merely establishing that Busse made a telephone call does not establish that by so doing, he desired to inflict severe emotional distress. Quite the contrary, Busse's failure to inform Nichols about the facts of the accident can be read not as a way to hurt her, but, rather, as an attempt to shield her from injury. Busse's disingenuity may as easily be inferred to have been a symptom of the classic denial that often accompanies traumatic experiences as that he wanted to inflict injury. Or his conduct may simply have been the result of plain cowardice.

Whatever the situation may have been, the record falls far

short of proving that Busse "desired" to cause Nichols sorrow, suffering, and severe emotional distress above and beyond that which a person would be expected to experience due to the loss of a daughter. Nor can it be said that Busse was certain, or substantially certain, that severe emotional distress would result from his actions.

Perhaps recognizing the frailty of its treatment of the intentional conduct issue, the majority next directs us to facts it concludes indicate that Busse's actions meet the lower recklessness standard, contending that Busse's "dragging and abandoning [the decedent's] body, concealing his knowledge of the accident, and falsely accusing [the decedent] of stealing his pickup" were reckless. But Busse's act of dragging and deserting the decedent's body after the accident cannot be said to have been done with substantial certainty that as a result Nichols would suffer emotional distress "so severe that no reasonable person should be expected to endure it." The same holds true for Busse's failure to inform Nichols of the accident and of his false accusation of automobile theft.

The accident and subsequent events were indeed tragic, and Busse's conduct was reprehensible; but the tort system cannot compensate every wrong committed in our society. As noted in the first paragraph of this dissent, the record simply fails to establish that Busse acted with the intent or recklessness required to maintain an action for intentional infliction of emotional distress.

I would therefore reverse the judgment of the district court and remand the cause for dismissal.

HASTINGS, C.J., joins in this dissent.